[CONSTITUTIONAL LAW.]

## Ex parte KEARNEY.

This Court has authority to issue a *habeas corpus*, where a person is imprisoned under the warrant or order of any other Court of the United States.

But this Court has no appellate jurisdiction in criminal cases, confided to it by the laws of the United States, and cannot revise the judgments of the Circuit Courts, by writ of error, in any case where a party has been convicted of a public offence.

Hence the Court will not grant a *habeas corpus*, where a party has been committed for a contempt adjudged by a Court of competent jurisdiction.

In such a case, this Court will not inquire into the sufficiency of the cause of commitment.

The case of *Crosby, Lord Mayor of London*, 3 *Wils.* 188. commented on, and its authority confirmed.

*1822.*

*Ex partè Kearney.*

*Feb. 9th.*

Mr *Jones* moved for a *habeas corpus* to bring up the body of John T. Kearney, now in jail, in the custody of the marshal, under a commitment of the Circuit Court for the District of Columbia, for an alleged contempt. The petition stated, that on the trial of an indictment in that Court, the petitioner was examined as a witness, and refused to answer a certain question which was put to him, because he conceived it tended materially to implicate him, and to criminate him as a *particeps criminis.* The objection was overruled by the Court, and he having persisted in refusing to answer the question, was committed to jail for the supposed contempt; and for no other cause.

Mr. *Jones*, for the petitioner, now argued, 1. That this Court has power to issue the writ of *habeas corpus* in every case where the personal liberty of the citizen is restrained under the judicial authority of the union. The jurisdiction is settled by a uniform series of decisions. It had been exercised in a case of treason;[a] in a case where the warrant of commitment was defective, in not showing a good cause

a  The United States v. Hamilton, 3 *Dall.* 17.

certain, on oath or affirmation;[a] and, at last the case of *Bollman & Swartwout*[b] settled the power of the Court to be universal, and co-extensive with the general judicial power of the Union. 2. He insisted that a fit case was made out to justify the exercise of the jurisdiction upon the present application. The jurisdiction of this Court cannot depend upon the nature of the commitment by the other Court. The writ of *habeas corpus* is a writ of right, and the nature and grounds of the commitment are to be looked into on the return. This Court must have power to issue the writ where an *inferior* Court commit even for a contempt; because if the process of contempt be a branch of criminal judicature, considered as a punishment for an offence, this Court has authority to control all inferior Courts and magistrates. In England, the Court of Common Pleas, although a tribunal of original and civil jurisdiction only, has, from the earliest times, exercised the authority of issuing the writ of *habeas corpus* to inquire into the cause of commitments by other jurisdictions.[c]

Mr. *Swann*, (*District-Attorney*,) contra, admitted that this Court had a general power of issuing the writ of *habeas corpus ad subjiciendum* to all the other

a *Ex parte* Burford, 3 *Cranch*, 448.

b 4 *Cranch*, 75.

c Wood's Case, 3 *Wils.* 173. Scroggs v. Coleshill, *Dyer*, 175. 4 *Inst.* 290. Bushell's Case, *Sir T. Jones' Rep.* 12. 2 *W. Bl.* 745. 2 *Hale's P. C.* 144. *Moor*, 838. 1 *Hale P. C.* 399. 406. 446.

courts and officers of the United States, but insisted that this was not a case in which the Court could exercise the authority. Because the Circuit Court for the District of Columbia was an inferior tribunal, it did not, therefore, follow, that an appeal lies to this Court from its judgment in criminal cases. This Court has no appellate jurisdiction in criminal cases. It can only revise the decisions of the Circuit Court, in such cases, where there is a certificate of a division of opinion of the judges below. Here there was no doubt the Court had jurisdiction of the case in which the party was committed for refusing to answer a question put to him, and which the Court had determined he was bound to answer. This Court cannot revise the principal case by an appellate process, neither can it revise that which has incidentally arisen out of it. Every Court of justice must have a discretionary power of punishing contempts ; and if an appeal were allowed upon every interlocutory judgment of this sort, there would be the greatest possible embarrassment and confusion.

Mr. Justice STORY delivered the opinion of the Court, and after stating the case, proceeded as follows : Upon the argument of this motion, two questions have been made : first, whether this Court has authority to issue a *habeas corpus*, where a person is in jail, under the warrant or order of any other Court of the United States ; secondly, if it have, whether, upon the facts stated, a fit case is made out to justify the exercise of such an authority.

As to the first question, it is unnecessary to say more, than that the point has already passed in *rem judicatam* in this Court. In the case of *Bollman and Swartwout*, (4 *Cranch* 75.) it was expressly decided, upon full argument, that this Court possessed such an authority, and the question has ever since been considered at rest.

The second point is of much more importance. It is to be considered, that this Court has no appellate jurisdiction confided to it in criminal cases, by the laws of the United States. It cannot entertain a writ of error, to revise the judgment of the Circuit Court, in any case where a party has been convicted of a public offence. And undoubtedly the denial of this authority proceeded upon great principles of public policy and convenience. If every party had a right to bring before this Court every case, in which judgment had passed against him, for a crime or misdemeanor or felony, the course of justice might be materially delayed and obstructed, and, in some cases, totally frustrated. If, then, this Court cannot *directly* revise a judgment of the Circuit Court in a criminal case, what reason is there to suppose, that it was intended to vest it with the authority to do it indirectly?

It is also to be observed, that there is no question here, but that this commitment was made by a Court of competent jurisdiction, and in the exercise of an unquestionable authority. The only objection is, not that the Court acted beyond its jurisdiction, but that it erred in its judgment of the law applicable to the case. If, then, we are to give any relief in this case,

1822.

Ex parte
Kearney.

it is by a revision of the opinion of the Court, given in the course of a criminal trial, and thus asserting a right to control its proceedings, and take from them the conclusive effect which the law intended to give them. If this were an application for a *habeas corpus*, after judgment on an indictment for an offence within the jurisdiction of the Circuit Court, it could hardly be maintained, that this court could revise such a judgment, or the proceedings which led to it, or set it aside, and discharge the prisoner. There is, in principle, no distinction between that case and the present; for when a Court commits a party for a contempt, their adjudication is a conviction, and their commitment, in consequence is execution; and so the law was settled upon full deliberation, in the case of Brass Crosby, Lord Mayor of London, (3 *Wilson*, 188.)

Indeed, in that case the same point was before the Court as in this. It was, an application to the Court of Common Pleas for a *habeas corpus* to bring up the body of the Lord Mayor, who was committed for contempt by the House of Commons. The *habeas corpus* was granted, and upon the return, the causes of contempt for which the party was committed, were set forth. It was argued, that the House of Commons had no authority to commit for a contempt; and if they had, that they had not used it rightly and properly, and that the causes assigned were insufficient. But the whole Court were of opinion, that the House of Commons had a right to commit for a contempt; and that the Court could not revise its adjudication. Lord Chief Justice DE GREY, on

that occasion said, " When the House of Commons adjudged any thing to be a contempt, or a breach of privilege, their adjudication is a conviction, and their commitment in consequence is execution ; and no Court can discharge, on bail, a person that is in execution by the judgment of any other Court. The House of Commons, therefore, having an authority to commit, and that commitment being an execution, what can this Court do? It can do nothing, when a person is in execution by the judgment of a Court having a competent jurisdiction. In such a case this Court is not a Court of appeal." Again—" The courts of K. B. or C. B. never discharged any person committed for a contempt, in not answering in the Court of Chancery, if the return was for a contempt. If the Admiralty commits for a contempt, or one be taken up on *excommunicato capiendo*, this Court never discharges the persons committed."—Mr. Justice BLACKSTONE said, " all Courts, by which I mean to include the two Houses of Parliament, and the Courts of Westminster Hall, can have no control in matters of contempt. The sole adjudication of contempt, and the punishment thereof, belongs exclusively, and without interfering, to each respective Court. Infinite confusion and disorder would follow if Courts could, by writs of *habeas corpus*, examine and determine the contempt of others."

So that it is most manifest from the whole reasoning of the Court in this case, that a writ of *habeas corpus* was not deemed a proper remedy, where a party was committed for a contempt by a Court of competent

jurisdiction; and that, if granted, the Court could not inquire into the sufficiency of the cause of commitment. If, therefore, we were to grant the writ in this case, it would be applying it in a manner not justified by principle or usage; and we should be bound to remand the party, unless we were prepared to abandon the whole doctrine, so reasonable, just, and convenient, which has hitherto regulated this important subject. We are entirely satisfied to administer the law as we find it, and are all of opinion, that, upon the facts of this case, the motion ought to be denied.

The argument of inconvenience has been pressed upon us with great earnestness. But where the law is clear, this argument can be of no avail; and it will probably be found, that there are also serious inconveniences on the other side. Wherever power is lodged, it may be abused. But this forms no solid objection against its exercise. Confidence must be reposed somewhere; and if there should be an abuse, it will be a public grieveance, for which a remedy may be applied by the legislature, and is not to be devised by Courts of justice. This argument was also used in the case already cited, and the answer of the Court to it is so satisfactory, that it would be useless to attempt any farther refutation.

Upon the whole, it is the opinion of the Court, that the motion be overruled.

Writ denied.[a]

1822.

Ex parte Kearney.

a *Vide Ante, Vol.* VI. p .204. Anderson v. Dunn, where it was determined, that an action could not be maintained against the Sergeant at Arms of the House of Representatives for imprison-

ing the plaintiff on a warrant for a contempt adjudged by the House. See also the case of J. V. N. Yates, 4 *Johns Rep.* 317. Yates v. Lansing, 9 *Johns. Rep.* 395. Yates v. The People, 6 *Johns. Rep.* 337. Burdett v. Abbott, 14 *East's Rep.* 1. S. C. 5 *Dow. Parl. Rep.* 165,