The Reporter has been politely furnished with the following case, argued and determined at Chambers, before the Chief Justice, in vacation.

#### FELIX PELTIER ads. A. S. PENNINGTON AND OTHERS.

A defendant will not be discharged out of custody on a writ of habeas corpus, at chambers, where the writ on which he is detained, is, in itself, a legal and proper one, and the court out of which it issued, is of competent jurisdiction, and where the only matter in dispute is the regularity of the process, and the validity of the arrest.

Upon application in behalf of the defendant, representing him to be unlawfully imprisoned in the jail of the county of Bergen, the chief justice allowed a habeas corpus, returnable before him at chambers. On Monday, the 24th March, 1834, the prisoner was brought up, attended by his counsel. Notice having been given by the direction of the chief justice, to the plaintiffs, they also attended by their counsel. By the sheriff's

Peltier *v.* Pennington and others.

return to the habeas corpus, the affidavits read, and the facts stated and admitted, the following case appeared. The defendant had been arrested on a *cap. ad resp.* out of the Supreme Court, at the suit of the plaintiffs for the sum of $23,342 52, in an action of trespass on the case, upon promises, returnable to the last term of said court. At that term, the court after argument, ordered the defendant to be discharged on filing common bail, on the ground that the affidavit for bail was materially defective in several particulars; after that order was made, the plaintiffs moved for leave to discontinue ; which was granted on payment of costs, with permission to enter the same at any time within twenty days, if they thought proper to do so.

These proceedings took place on the 4th day of March, on which day the court adjourned for the term. On the day following, the plaintiffs sued out of the Common pleas of the county of Bergen, a writ of cap. ad resp. for a different cause of action from that mentioned in the former affidavit for bail, and delivered such second writ to the sheriff. The defendant being in custody of the sheriff at that time, as well on criminal process, as on the capias issued out of the Supreme Court, gave bail at the suit of the state, and then demanded his enlargement, in pursuance of the aforesaid order of the Supreme Court. The sheriff, thereupon, told him, he was discharged out of custody at the suit of the plaintiffs on the writ, which had been returned to that court, but that he must, (and the sheriff accordingly did, without liberating him at all) detain him in custody on the second writ, above mentioned. If further appeared, that the Washington Banking Company, for which the plaintiffs had since been appointed receivers, had sued out an attachment against the property of the defendant, as a non resident debtor, for the same debt or cause of action for which the suit in the Common Pleas, had been commenced by the receivers ; which suit, by attachment, was still pending. Afterwards, and while the defendant was detained in custody on the second capias, to wit, on the 7th of March, the plaintiffs filed a new affidavit for bail in the Supreme Court, for the same cause of action mentioned in the first affidavit, and on the same day, entered in the minutes, a discontinuance of the original suit, but did not make

---

---

the payment of costs a part of the rule, though they paid to the clerk of the court, as drawn up and taxed by him, the defendant's costs. Whereupon, the plaintiffs sued out of the Supreme Court, another capias, and on the next day, which was the 8th of March, and while the defendant was detained in custody as aforesaid, delivered it to the sheriff of Bergen, by virtue of which last mentioned writ, the defendant is now imprisoned. Upon these facts, *Williamson* and *Wood*, the defendant's counsel, moved for his discharge, and insisted,

1st. That if defendant was unlawfully arrested and detained, he is entitled to be discharged out of custody, upon habeas corpus, and

2d. That his arrest and imprisonment was illegal.

In support of this second proposition, it was insisted,

First. That the defendant having been unlawfully arrested and imprisoned on the first capias, could not be served with another writ by the same plaintiffs, for the same or for any other cause of action, or by any person in collusion with them, while so imprisoned; nor until he had been fully discharged out of custody on the first arrest, and time allowed him to return home. That therefore the arrest or detainer by the same plaintiffs on the writ out of the Common Pleas, which was served on the 5th March, was unlawful and oppressive.

Second. That the detainer or arrest of the defendant, on the capias out of the Common Pleas, was illegal and oppressive also, because it was for the same cause of action for which the suit by attachment had been commenced, and because it was a contrivance to defeat the order of the Supreme Court, made on the day preceding the second arrest, for the enlargement of the defendant on filing common bail.

Thirdly. That the defendant having been unlawfully arrested in the first instance ; and then unlawfully detained in custody under color of the capias out of the common Pleas ; the service of the second capias out of the Supreme Court, at the suit of the same plaintiffs and for the same cause of action, while the defendant was so unlawfully restrained of his liberty, was unlawful and void.

Fourth. That independently of these objections, the second capias out of the Supreme Court, and the arrest thereupon,

were unlawful and void; because the first action was still pending, and had not been discontinued according to law, the same not having been entered pursuant to the order of the court, " on payment of costs; " and the costs not having been taxed and paid, the payment to the clerk being as no payment.

On the questions touching the regularity and lawfulness of the proceedings on the part of the plaintiffs, numerous authorities were cited and commented upon by counsel on boths sides. But as no opinion was expressed by the chief justice on those points, it is unnecessary to give any reference to the cases. Touching the right of a judge at chambers, to discharge on habeas corpus, in a case like this, the following authorities were cited : viz, *Rev. Laws* 196, *sec.* 8 ; *The State* v. *Ward*, 3 *Halst. Rep.* 120 ; *Bank of United States* v. *Jenkins*, 18 *Johns. Rep.* 305 ; *Cable* v. *Cooper*, 15 *Johns. Rep.* 152 ; *Wilson, ex parte*, 6 *Cranch*, 52 ; *Ex parte Watkins*, 3 *Peters*, *U. S. Rep.* 193, &c.

*Vanarsdale* and *W. Pennington* for plaintiffs.

HORNBLOWER, C. J.   After giving this case all the consideration which the summary nature of the proceeding will admit of, and under all the light which the numerous cases cited, and the very able arguments of counsel have shed upon the subject, I find myself bound by law to remand the prisoner.   In doing so, it is not my intention to intimate any opinion, upon the various points that have been discussed respecting the legality and regularity of the proceedings on the part of the plaintiffs.   I wish to leave the defendant at liberty, without prejudice by any thing now said, to apply at bar, if he thinks proper to do so, for his enlargement on those grounds.   But in my opinion, this is not a proper case for the discharge of a defendant out of custody, upon a writ of habeas corpus.   Whether this defendant is lawfully or unlawfully imprisoned, does not depend upon any settled and fundamental principles of law; but upon rules and questions of practice that have arisen in the progress of an ordinary suit at law, which are under the control, and ought only to be settled at the bar of the court in which the suit is depending.   The doctrine contended for by the defendant's counsel, if once established, would soon draw into discussion and decision upon habeas corpus at chambers, a very great proportion of the ordinary litigation in civil suits.   Every man conceiving

Peltier *v.* Pennington & Others.

himself improperly arrested upon mesne or final process, or entitled to his discharge upon the ground of some supposed mistake, irregularity or laches of the adverse attorney, would at once sue out a habeas corpus for his enlargement.   In short, it would lead to utter confusion in the prosecution of suits, and bring into conflict the different tribunals and officers of justice. We should be called upon in this way, not only to settle the law and practice in suits depending in the Supreme Court, but to interfere with the business and decide upon the rules and practice of the courts of common pleas.   Not only so, but the justices of this court would be appealed to on habeas corpus, to determine upon the sufficiency of affidavits for bail, and the legality or regularity of discontinuances and other interlocutory proceedings in other courts.   I do not wish to restrict the use of this valuable writ; but we must not suffer our partiality for a proceeding so justly dear to freemen, as is the writ of habeas corpus, to beguile us into an abuse of it.   We must not apply it to cases it was never intended to reach; and in which the well settled rules and principles of the common law, as administered in our courts, have furnished sufficient guards, against the unlawful imprisonment of the citizen.   It is true, the defendant is restrained of his liberty, and it may be, that he is improperly restrained.   But in this case it is not by force or violence; nor yet, by *mere* pretence or color of law.   It is upon process, *by which*, and for a cause of action *for which*, all other matters being right, he may be *lawfully* imprisoned.   The only questions are, whether the writ was issued with legal and technical regularity; and whether the defendant, under all the circumstances of the case, was properly arrested : questions, the court out of which the writ issued, is perfectly competent to decide, and which, the legal presumption is, it will decide, when called upon to do so, according to law.

That the defendant may have to remain in custody until the next, or even to a subsequent term, proves nothing. His detention will be a *lawful* one until it can be decided by the proper tribunal, whether the plaintiffs have a right to detain him or not.   His case is not an uncommon one; but like a great many others in which defendants are arrested and detained in custody, either of the sheriff or their bail, until by some interlocuto-

ry or final order or judgment, it is ascertained that they never ought to have been arrested; or that the plaintiff had no cause of action against them. But it does not always follow, from such interlocutory or final decision, that the defendant was unlawfully imprisoned, in that sense of the expression which would entitle him to an action or to discharge upon habeas corpus.

If a judge, at chambers, upon a habeas corpus, is to inquire into and decide upon the right of a plaintiff to arrest a defendant, and hold him to bail in a civil suit, in which, upon general principles, the plaintiff is entitled to bail, where shall he stop? Shall he limit himself to the inquiry, whether the proceedings are technically correct; or may he go further and enquire into the merits of the case, the honesty and justice of the plaintiff's demand? A defendant may be as unjustly and oppressively arrested on a regular, as on an irregular writ. So there may be a *regular* arrest without a just cause of action, and an *irregular* arrest where there is a just cause of action. In either case, the defendant in the general sense of the term, is unlawfully arrested. Where then shall the judge at chambers, terminate his inquiries? If he substitutes himself, in the place of the court out of which the process has issued, I do not see where the practice is to end.

I am not a little strengthened in my opinion against entertaining this application by the singular and striking fact, that not a single case has been cited, which, either upon facts or principle, sustains the doctrine contended for. If the important and beneficial writ of habeas corpus *ad subjiciendum*, was designed for, or was in its nature susceptible of such a use, it is hardly conceivable that the love of liberty, and the ingenuity of counsel, would not, long before this late period of our legal history, have brought it into constant and familiar use. Although Congress has never passed any law similar to the celebrated habeas corpus act of 31 *Car.* II, or any act prescribing the cases in which writs of habeas corpus *ad subjiciendum* may be issued; yet, under a just construction of the constitution, and of the judiciary act, the Supreme Court of the United States have decided, that the federal courts and judges have as full jurisdiction and powers upon this subject, as the courts

at Westminster Hall. *Ex parte Watkins,* 3 *Peters U. S. Rep.* 201; *Ex parte Bollman,* 4 *Cranch,* 75; *Ex parte Burford,* 3 *Cranch,* 448; *Ex parte Kearney,* 7 *Wheat. Rep.* 38. In the case, *Ex parte Watkins,* just cited, Chief Justice Marshall says, "the writ of habeas corpus is a high prerogative writ, known to the common law, the great object of which is, the liberation of those who may be imprisoned without sufficient cause. It is," he says, "in the nature of a writ of error, to examine the legality of the commitment." And yet no case can be found, it is believed, in which any of the federal courts or judges have, upon habeas corpus, liberated a person from confinement on civil process. On the contrary, in the case, *Ex parte Wilson,* 6 *Cranch,* 52, Marshall, chief Justice, after consulting with the other judges, stated, that the court was not satisfied, that a habeas corpus is the proper remedy in a case of arrest under a civil process; and although in that case, the prisoner was clearly entitled to his discharge under an act of Congress, the writ was refused.

The habeas corpus act of New-York, is more extensive than the British statute. The latter, like our statute, *Rev. Laws* 193, is confined to commitments for crimes and criminal matters. The former extends to and gives the judges in vacation, cognizance in *all* cases of imprisonment generally. It is co-extensive with the common law. *Per Spencer, Just.* in *Cable* v. *Cooper,* 15 *Johns. Rep.* 152; 2 *Kent's Com.* 1 *Ed.* 25. Yet the courts or judges in New-York, have never gone so far as I am called upon to do on this occasion; but on the contrary, it has been expressly decided there, that a judge at chambers, has no power to discharge on habeas corpus from imprisonment, on an execution out of a court of record. *Yeates' case,* 4 *Johns. Rep.* 318; 2 *Kent's Com.* 1 *Ed.* 28; *Cable* v. *Cooper,* 15 *Johns. Rep.* 152. In the last mentioned case, Van Ness, Justice, who delivered the opinion of the court, says, "It may well be doubted, whether the statute gives to a judge in vacation, a right to discharge a party imprisoned on civil process. If it were necessary to decide that question in this case, and for the first time, I should say it does not."

In the case of the *Bank, &c.* v. *Jenkins,* 18 *Johns. Rep.* 305, it was admitted, that the ca. sa. under which the defendant was

in custody, had been unlawfully issued; yet the relief was refused. Spencer, chief justice, said, " This court has power to relieve against *all* illegal imprisonments, either in civil or criminal cases. It is a power derived from the common law, and I know of no limit to it, but our sound discretion. But, we are of opinion that the writ of habeas corpus is not the proper remedy for the defendant in this case." Kent, chief justice, in the case of *Yeates*, 4 *Johns. Rep.* 358, says, " I apprehend that there is not an instance in the English law, of a judge in vacation, undertaking to decide upon the legality of a commitment in execution by the judgment of any court of *record.*"

The case of *Hecker* v. *Jarrett*, 1 *Bin. Rep.* 374, was an action for a penalty for re-committing a party who had been discharged from confinement on a ca. sa. by a judge at chambers on a writ of habeas corpus. But the judge in that case, had acted under the broad and extensive provisions of the act of Pennsylvania; whether correctly or not, the court did not directly decide, and it is the only instance I have been able to find of such a proceeding in the reports of that state.

I do not intend by anything I have said, to interfere with the decision of Mr. Justice Ford, in the case of *The State* v. *Ward*, in 3 *Halst.* 120. The prisoner, in that case, had been committed on an execution out of a court for the trial of small causes. The imprisonment was not, perhaps, unlawful in such a sense as to render the plaintiff or the officer liable in an action for false imprisonment; yet he was manifestly in confinement, contrary to the spirit and intention of the law, and under circumstances that entitled him to his liberation by some legal authority. If relief could not be extended to him upon habeas corpus, he was probably without remedy. At any rate, it will be time enough to question the correctness of that decision, when it shall be brought into review upon certiorari, or upon a proper state of pleadings in some action growing out of that, or some other such proceeding. Without committing myself at present, I will only say, the decision of Justice Ford does not really conflict with my views upon this subject, nor with the principles expressed by Spencer, chief justice, and Kent, chief justice, in the cases above cited. The court for the trial of small causes, is a statute tribunal of limited and specific jurisdiction; and

though declared by the act creating it, to be a court of record, it is so only for the special purposes therein mentioned; and is not to be assimilated to common law courts of record. Nor do I intend to limit the remedy by writ of habeas corpus in any other way than by the exercise of a sound, legal discretion. I do not think the eighth section of the habeas corpus act, *Rev. Laws* 196, nor the thirtieth section of the act concerning sheriffs, *Rev. Laws* 243, excludes an inquiry into the cause of confinement, in every case where it is, or purports to be, by execution or other process in a civil suit. If only colorable or palpably illegal; as if in disobedience or contempt of a plain and unequivocal rule or order of a competent court: or if the execution or other civil process, was issued by a court not having jurisdiction over the party, or of the subject matter, the writ of habeas corpus may, for all I now see, be resorted to as a legitimate and speedy remedy. But it will be time enough to discuss such cases when they arise. It is sufficient to say, the case now before me is of a very different character. The writ on which the defendant is detained, is, *in itself*, a legal and proper one; the court out of which it issued is of competent jurisdiction. The only matter in dispute is the regularity of the process, and the validity of the arrest. These are points that must and ought to be debated at bar, before the court in which the cause is pending. They ought not, by means of a habeas corpus, to be drawn into discussion before a single judge at chambers. They are matters *in the cause* upon which the parties have a right to be heard before, and to have the opinion of, all the judges composing the court.

Let the defendant be remanded.

CITED in *State* v. *Sheriff of Middlesex*, 3 *Gr.* 69.