### HEINZE et al. v. BUTTE & B. CONSOL. MIN. CO.

(Circuit Court of Appeals, Ninth Circuit. March 4, 1904.)

#### No. 1,033.

1. CONTEMPT—NATURE OF PROCEEDING—REVIEW.

A bill in equity, filed in aid of an action at law to recover for trespasses on a mining claim, alleged that defendants had extended their underground workings from adjoining claims owned by them into the claim of complainant, and prayed for an injunction restraining them from extracting and removing ore therefrom. The answer justified the trespasses on the ground that the veins or lodes into which defendants' workings were extended had their apexes in defendants' claims, and were their property. A preliminary injunction was granted, and, on petition of complainant, an order was entered requiring defendants to permit agents of complainant to enter their workings, and examine, inspect, and survey the same so far as necessary to obtain evidence on the issue joined. Defendants having refused to permit such inspection and survey, an order was entered finding them in contempt of court, and adjudging a fine against them; such order, however, to be discharged, as to both fine and commitment, on their compliance with the previous order. *Held*, that such order of contempt was not a judgment in a criminal, but in a civil, proceeding; that it was remedial and coercive in character, and entered for the purpose of enforcing private rights of complainant, judicially determined, and was not reviewable by writ of error.

2. SAME—PERSONS BOUND BY ORDERS OF COURT—OFFICERS OF CORPORATION DEFENDANT.

Officers of a mining corporation which is a party to a suit in equity in which it has been ordered to permit an inspection and survey of its mine are bound by such order, although not personally parties to the suit, and may be subjected to punishment for contempt, where, having the power to require compliance with it by the company, they refuse to do so.

3. INTERLOCUTORY ORDERS—PERSONS BOUND—PURCHASER PENDENTE LITE.

A purchaser of mining property, including the shafts, machinery, and workings thereon, pending a suit against the grantor involving the alleged extension of such workings into adjoining property, is bound by an order subsequently made by the court in such suit permitting the adverse party to inspect and survey the mine.

In Error to the Circuit Court of the United States for the District of Montana.

This is a writ of error, directed to the Circuit Court for the District of Montana, to review an order of that court adjudging F. Augustus Heinze,

Josiah H. Trerise, and Alfred Frank guilty of contempt of court, in violating an order of the court permitting the inspection and survey of certain premises mentioned and described in the order.

On May 17, 1898, the defendant in error filed a bill in equity in the Circuit Court for the District of Montana against the Montana Ore Purchasing Company, Chili Gold Mining Company, John MacGinnis, Edward L. Whitmore, and Carlos Warfield, as defendants, to enjoin and restrain the defendants from extracting and removing certain ores and minerals from out of the Michael Devitt claim, of which complainant claimed to be the owner. The suit was ancillary to an action at law brought by the same complainant, as plaintiff, against the same parties, as defendants, to recover damages for the same trespasses. Upon the bill, process was issued, and the defendants appeared and answered. The Montana Ore Purchasing Company, in its answer, justified the trespasses charged in the bill of complaint by virtue of its claim of ownership of the Rarus and Johnstown lode claims, lying northerly of and adjacent to the Michael Devitt claim. It was alleged that these claims were patented by the United States; that they had parallel end lines; that certain veins or lodes which had their tops or apexes within the said Rarus and Johnstown lode claims extended on their strike through said lode claims nearly parallel to the side lines of said claims, and departed through the end lines thereof; that these veins or lodes on their downward course or dip so far departed from a perpendicular as to pass beyond the vertical side lines of said lodes or claims, and to enter the ground described in the complaint as the Michael Devitt lode claim; that the Montana Ore Purchasing Company was the owner of said veins or lodes which had their tops or apexes within the Rarus and Johnstown claims, and all ores, minerals, and metals therein contained, throughout their entire depth; that any entry which had been made by the defendant or its lessee, the Chili Gold Mining Company, within the vertical side lines of the Michael Devitt claim mentioned in the complaint, had been upon such veins or lodes, and that any ores, minerals, or metals which had been extracted from within said vertical side lines had been taken and extracted from said vein or lode; and that the same was the property of the defendant or its lessee. The answer of the defendant the Chili Gold Mining Company pleaded substantially the same justification, under the lease from the Montana Ore Purchasing Company. The answer of the defendants MacGinnis, Whitmore, and Warfield justified as officers or agents of the Chili Gold Mining Company.

Upon the bill an injunction pendente lite was issued in accordance with the prayer of the bill, and served upon F. Augustus Heinze, as president of the Montana Ore Purchasing Company, Edward L. Whitmore, a trustee and general manager of the Chili Gold Mining Company, and upon each of the other defendants named in the bill of complaint. This injunction is still in force.

On October 1, 1903, the complainant in the action presented a petition to the Circuit Court, showing that the defendants had constructed certain shafts upon the Rarus and Johnstown claims, and from said shafts had made a large number of underground workings, extending through the said Johnstown and Rarus claims into and beneath the surface of the Michael Devitt claim, and also had extended and made a large number of workings from the said shafts south into the claim called the "Pennsylvania Claim," which joins the said Michael Devitt claim on the west, and from the said Pennsylvania claim into and beneath the surface of the Michael Devitt claim; that, in order that the complainant might be prepared to prove its contention in the case, and prove that it was the owner of the ore bodies in controversy, and also prove a violation of the injunction by the defendants, it was necessary that the complainant, by its representative, should make a survey, inspection, and examination of certain portions of the Rarus and Johnstown claims, and underground workings therein, and underground workings made from the shaft and working of said claims, and from and through the Pennsylvania claim into and beneath the surface of the Michael Devitt claim, and all workings made from any of said claims under the surface of the Michael Devitt claim. To this petition the Montana Ore Purchasing Company filed its answer on October 13, 1903, in which it denied the several allegations contained in the petition; denied that it had possession and control of any of the shafts or portions of the Johnstown and Rarus claims lying north of the Michael Devitt claim,

or extending into the Michael Devitt claim; and denied that it was necessary for the complainant to have the survey, examination, or inspection of the workings in the Rarus, Johnstown, or Pennsylvania claims for the purpose of the trial, or for any matter connected therewith.

On October 14, 1903, upon the petition and upon the motion of the complainant, an order of inspection, examination, and survey was entered in the Circuit Court, appointing certain persons as agents and representatives of the complainant during a period of 15 days, to survey, examine, and inspect the Michael Devitt, Rarus, Johnstown, and Pennsylvania lode claims, and all the underground workings and openings in said claims, so far as was necessary to enable complainant to ascertain whether the said underground workings and openings in the Rarus, Johnstown, or Pennsylvania connected with the underground workings in the Michael Devitt lode claim. It was further ordered that for the purpose of such inspection, examination, and survey, the agents and representatives of the complainant were authorized to temporarily remove or open all doors, bulkheads, or other obstructions which might be found in said premises, or any part thereof, and which might interfere with or obstruct such examination, inspection, and survey, provided that at or before the completion of such inspection, examination, and survey, the complainant should replace all such bulkheads, doors, or other obstructions so removed, and leave the premises in the same condition as found, so far as practicable. The defendants were required to hoist and lower complainant's representatives through the shafts on the Rarus and Johnstown lode claims in the control of the defendants, and furnish to the representatives of the complainant ingress to and egress from the said premises and the said workings at all reasonable times during the period of 15 days.

The defendants thereupon appealed from said order to this court, and petitioned this court for a writ of supersedeas. This petition was denied, the court holding that the order appealed from was in no sense final, and therefore not appealable. 126 Fed. 168. The defendants thereupon presented to this court a petition for a writ of certiorari to review the action of the Circuit Court in making the order of October 14, 1903. This petition was denied; the court holding that, having determined that the order was not appealable, the court had no power to issue the writ of certiorari. 126 Fed. 169. Thereafter another petition for writ of certiorari was filed in this court by the Johnstown Mining Company to review the same order. This petition alleged that it was not a party to the action in the Circuit Court, but, it appearing that the petitioner had acquired its title to a portion of the ground involved in the inspection order from the Montana Ore Purchasing Company during the pendency of the cause, and after the issues were joined in the same, this petition was also denied.

Pending these proceedings the order of the Circuit Court of October 14, 1903, was not enforced, and on November 3, 1903, the period for the inspection, examination, and survey mentioned in the order was extended by the court for a period of 21 days from November 4, 1903. Upon an attempt being made upon several days from November 4 to November 16, 1903, to execute and enforce the order, its execution is charged to have been impeded and obstructed by F. Augustus Heinze, Josiah H. Trerise, and Alfred Frank. The charge being brought to the attention of the Circuit Court by affidavit, that court issued an order, directed to Heinze, Trerise, and Frank, to show cause why they, and each of them, should not be committed for contempt in refusing to permit the inspection, examination, and survey as directed by the court. In response to this order, the parties named appeared, and severally pleaded "Not guilty." The court thereupon heard testimony upon said charge, and rendered its judgment on December 19, 1903, to the effect that the persons charged, to wit, F. Augustus Heinze, Josiah H. Trerise, and Alfred Frank, were each and all guilty of contempt of court in violating, obstructing, and refusing to obey the order of the court; that the acts of contempt were committed after notice and full knowledge of the issuance of the said order. From this order a writ of error was allowed, and on the 21st day of December, 1903, a bond on the writ of error for costs in the sum of $300 was accepted and approved by the judge holding the Circuit Court, but the judge refused to take a supersedeas bond to stay the judgment of the court in the contempt proceedings. Thereupon application was made to the writer of this opinion, as a judge of

the Circuit Court of Appeals, to take a supersedeas bond and direct the clerk of the Circuit Court of Appeals to issue a writ of supersedeas to the court below, staying the execution of the judgment of the court. The supersedeas bond was taken, and a writ of supersedeas issued accordingly.

Garret W. McEnerney, James M. Denny, and John J. McHatton, for plaintiffs in error Heinze and Trerise.

Robert B. Smith, for plaintiff in error Alfred Frank.

John F. Forbis, Crittenden Thornton, and J. F. Riley, for defendant in error.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

MORROW, Circuit Judge. The defendant in error has moved to dismiss the writ of error on the ground that this court has no jurisdiction to review the judgment of the Circuit Court in this case. At common law the exercise by a court of competent jurisdiction of the power to punish for contempt could not be reviewed. 9 Cyc. 61. "The power to punish for contempts is inherent in all courts. Its existence is essential to the preservation of order in judicial proceedings, and to the enforcement of the judgments, orders, and writs of the courts, and consequently to the due administration of justice. The moment the courts of the United States were called into existence and invested with jurisdiction over any subject, they became possessed of this power." Ex parte Robinson, 19 Wall. 505, 506, 22 L. Ed. 205.

The appellate jurisdiction of the Circuit Court of Appeals to review by appeal or writ of error final decisions in the District Court and the existing Circuit Courts is provided in section 6 of the act of March 3, 1891, c. 517, 26 Stat. 826, 828 [U. S. Comp. St. 1901, pp. 547, 549]. It is there provided that this jurisdiction shall be exercised in all cases other than those provided for in the preceding section of the act, unless otherwise provided by law. The cases provided for in the preceding section of the act relate to appeals and writs of error from the District and Circuit Courts direct to the Supreme Court, and do not include final decisions in the District and Circuit Courts in contempt proceedings. The primary object of the act of March 3, 1891, well known as a matter of public history, manifest on the face of the act, and judicially declared in the leading cases under it, was to relieve the Supreme Court of the overburden of cases and controversies arising from the rapid growth of the country and the steady increase of litigation, and, for the accomplishment of this object, to transfer a large part of the appellate jurisdiction of the Supreme Court to the Circuit Courts of Appeals thereby established in each judicial circuit, and to distribute between the Supreme Court and the Circuit Courts of Appeals, according to the scheme of the act, the entire appellate jurisdiction from the Circuit and District Courts of the United States. American Construction Co. v. Jacksonville Ry. Co., 148 U. S. 372, 382, 13 Sup. Ct. 758, 37 L. Ed. 486; United States v. American Bell Tel. Co., 159 U. S. 548, 551, 16 Sup. Ct. 69, 40 L. Ed. 255. Prior to this act the general appellate jurisdiction of the Supreme Court in civil cases was provided for in the several acts of Congress incorporated into sections 691, 692, and 693 of the Revised Statutes, and the authority to decide questions occurring on the hearing or trial of any criminal proceeding before a Circuit

Court, upon which the judges were divided in opinion, was provided for in section 697 of the Revised Statutes. Neither of these sections provided in express terms for the review of judgments in contempt proceedings, but very early in the judicial history of the Supreme Court the question arose whether the court had authority to review the judgments of the Circuit Courts in such proceedings. The first case in which this question was considered was Ex parte Kearney, 7 Wheat. 38, 5 L. Ed. 391. In that case a petition was presented to the Supreme Court for a writ of habeas corpus to bring up the body of Kearney, who was in prison under a commitment of the Circuit Court for an alleged contempt. The petitioner was a witness under examination in the Circuit Court, and had refused to answer a question put to him, on the ground that the answer might tend to criminate him as a particeps criminis. The objection was overruled, and, he having persisted in his refusal to answer the question, he was committed to jail for contempt. It was contended, in opposition to the petition for writ of habeas corpus, that the Supreme Court had no appellate jurisdiction in criminal cases, and that it could only revise the decisions of the Circuit Court in cases where there was a certificate of a division of opinion of the judges below. The writ was denied. Mr. Justice Story, in delivering the opinion of the court, said:

"It is to be considered that this court has no appellate jurisdiction confided to it in criminal cases by the laws of the United States. It cannot entertain a writ of error to revise the judgment of the Circuit Court in any case where a party has been convicted of a public offense. And undoubtedly the denial of this authority proceeded upon great principles of public policy and convenience. If every party had a right to bring before this court every case in which judgment had passed against him for a crime or misdemeanor or felony, the course of justice might be materially delayed and obstructed, and in some cases totally frustrated. If, then, this court cannot directly revise a judgment of the Circuit Court in a criminal case, what reason is there to suppose that it was intended to vest it with the authority to do it indirectly? It is also to be observed that there is no question here but that this commitment was made by a court of competent jurisdiction, and in the exercise of an unquestionable authority. The only objection is, not that the court acted beyond its jurisdiction, but that it erred in its judgment of the law applicable to the case. If, then, we are to give any relief in this case, it is by a revision of the opinion of the court, given in the course of a criminal trial, and thus asserting a right to control its proceedings and take from them the conclusive effect which the law intended to give them. If this were an application for a habeas corpus after judgment on an indictment for an offense within the jurisdiction of the Circuit Court, it could hardly be maintained that this court could revise such a judgment, or the proceedings which led to it, or set it aside and discharge the prisoner. There is, in principle, no distinction between that case and the present, for, when a court commit a party for contempt, their adjudication is a conviction, and their commitment, in consequence, is execution; and so the law was settled, upon full deliberation, in the case of Brass Crosby, Lord Mayor of London, 3 Wilson, 188."

In the case of New Orleans v. Steamship Company, 20 Wall. 387, 392, 22 L. Ed. 354, the Circuit Court of the United States for the District of Louisiana had obtained jurisdiction of a controversy between the steamship company and the authorities of the city of New Orleans concerning a lease of certain water-front property by the steamship company. An injunction had been issued by the Circuit Court, restraining the city authorities from interfering with the possession of the property as held by the steamship company. The city surveyor,

aided by a number of laborers, acting under an order of the city coun-cil approved by the mayor, destroyed the fence or inclosure erected by the company around the leased premises; and thereupon the mayor of the city applied to a city court for an injunction to restrain the company from rebuilding the inclosure which had been destroyed, and an injunction was granted by the city court accordingly. The company thereupon obtained a rule in the Circuit Court requiring the mayor to show cause why he should not be punished for contempt in taking such action in another tribunal. At the hearing the court decreed that the mayor should pay a fine of $300 for the contempt of court wherewith he was charged; that the city should be enjoined from interfering with the possession and infringement of the demised premises by the company during the life of the lease, and that the company should recover from the city $8,000 for damages; and that the city should pay the costs of the suit. From the decree in the case an appeal was taken to the Supreme Court of the United States, where the decree or judgment was affirmed. Speaking of the fine imposed upon the mayor, the court said:

"The fine of three hundred dollars imposed upon the mayor is beyond our jurisdiction. Contempt of court is a specific criminal offense. The imposition of the fine was a judgment in a criminal case. That part of the decree is as distinct from the residue as if it were a judgment upon an indictment for perjury committed in a deposition read at the hearing. This court can take cognizance of a criminal case only upon a certificate of division in opinion. In Crosby's Case, Mr. Justice Blackstone said: 'The sole adjudication for contempt, and the punishment thereof, belongs exclusively and without interfering to each respective court.' "

In the case of In re Chiles, 22 Wall. 157, 22 L. Ed. 819, the state of Texas applied to the Supreme Court for a rule on John Chiles to show cause why he should not be dealt with as guilty of a contempt of that court, in disobeying one of its decrees. The decree alleged to have been disobeyed by Chiles is found in Texas v. White, 7 Wall. 700, 742, 19 L. Ed. 227, and had relation to the title to certain bonds of the United States issued to the state of Texas. The suit was an original suit in the Supreme Court, in which the state of Texas, claiming the bonds as her property, prayed for an injunction to restrain the defendants White and Chiles from receiving payment from the national government, and to compel the surrender of the bonds to the state. The defendants filed separate answers. Notwithstanding the decree, Chiles continued to claim title to the bonds under a transaction not set up in his answer to the suit. The court held that he was not the less concluded and bound to obey the injunction; that notwithstanding the fact that, in the answer to the order to show cause, Chiles asserted a different title or source of title from the one imputed to him in the suit, and defended by him, he was in contempt of court in setting up and seeking to enforce his claim. He was found guilty of contempt, the court holding that punishments for contempt of court had two aspects, namely: (1) To vindicate the dignity of the court from disrespect shown to it or its orders; (2) to compel the performance of some order or decree of the court which it is in the power of the party to perform, and which he refuses to obey.

The next case is that of Hayes v. Fischer, 102 U. S. 121, 26 L. Ed.

95. The facts of the case are stated in the opinion of the court by Mr. Chief Justice Waite as follows:

"Fischer, the defendant in error, brought a suit in equity in the Circuit Court of the United States for the Southern District of New York to restrain Hayes, the plaintiff in error, from using a certain patented device. In this suit an interlocutory injunction was granted. Complaint having been made against Hayes for a violation of this injunction, proceedings were instituted against him for contempt, which resulted in an order by the court that he pay the clerk $1,389.99 as a fine, and that he stand committed until the order was obeyed. To reverse this order, Hayes sued out this writ of error, which Fischer now moves to dismiss on the ground that such proceedings in the Circuit Court cannot be re-examined here. If the order complained of is to be treated as part of what was done in the original suit, it cannot be brought here for review by writ of error. Errors in equity suits can only be corrected in this court on appeal, and that after a final decree. This order, if part of the proceedings in the suit, was interlocutory only. If the proceeding below, being for contempt, was independent of and separate from the original suit, it cannot be re-examined here either by writ of error or appeal. This was decided more than fifty years ago in Ex parte Kearney, 7 Wheat. 38 [5 L. Ed. 391], and the rule then established was followed as late as New Orleans v. Steamship Company, 20 Wall. 387 [22 L. Ed. 354]. It follows that we have no jurisdiction."

The next case is that of Worden v. Searls, 121 U. S. 14, 7 Sup. Ct. 814, 30 L. Ed. 853. The suit was a bill in equity in the Circuit Court to restrain infringement of letters patent, and for assessment of damages. A preliminary injunction was issued and served upon the defendants. Afterwards an order was made and entered by the court, entitled in the cause, imposing a fine of $250 on the defendants, to be paid by them to the complainant, for a violation of the preliminary injunction. This order was opened for a further hearing, and an order was made, entitled in the cause, imposing a fine of $1,182 on the defendants for such violation, to be paid to the clerk of the court, and by him to be paid over to the plaintiff, for damages and costs; the defendants to stand committed until the same should be paid. An appeal by the defendants from the order was allowed, and an order was made that all proceedings to enforce the collection of the fine be stayed until the further order of the Circuit Court on the giving of a specified bond, which bond was given. On the report of the master on the reference under the interlocutory decree, a final decree was entered that the plaintiffs recover against the defendants $24,573.91 as profits, and $386.40 costs. From this final decree the defendants appealed to the Supreme Court. In that court the defendants asked for a review and reversal of the orders imposing fines for violation of the preliminary injunction. The complainant contended that the Supreme Court could not review the action of the Circuit Court in punishing a contempt committed by a violation of such injunction: (1) Because the proceedings were criminal in their character; (2) because the action of the Circuit Court was by section 725 of the Revised Statutes [U. S. Comp. St. 1901, p. 583] expressly made discretionary. The court held, with respect to these objections, that it had jurisdiction to review the final decree in the suit and all interlocutory decrees and orders; distinguishing the facts of the case from those of Ex parte Kearney, 7 Wheat. 39, 5 L. Ed. 391, and the case of New Orleans v. Steamship Company, 20 Wall. 387, 22 L. Ed. 354. The court also held that section 725 of the Revised

Statutes [U. S. Comp. St. 1901, p. 583] did not make the action of the court imposing a fine for contempt such a matter of discretion that the orders imposing the fines were not reviewable. The court said: "They were, to all intents and purposes, orders in the course of the cause, based on the questions involved as to the legal rights of the parties." It was further held that, although the court had jurisdiction of the suit and of the parties, the order for the preliminary injunction was unwarranted, as a matter of law, and the orders imposing the fines, so far as they had not been executed, were, under the special circumstances of the case, reviewable by the court, under the appeal from the final decree. The final decree of the Circuit Court was reversed, and the case remanded, with directions to dismiss the bill, with costs, but without prejudice to the power and right of the court to punish the contempt referred to in the orders by a proper proceeding.

It appears from these decisions that the Supreme Court draws a distinction between a contempt proceeding where the court is called upon to vindicate its authority and dignity, and where the enforcement of its orders and decrees are, to all intents and purposes, orders in the course of the cause based on the questions involved as to the legal rights of the parties. The first are in the nature of criminal proceedings, and under the law as it stood prior to the act of March 3, 1891, establishing the Circuit Courts of Appeals, the jurisdiction of the Supreme Court to review the judgment of the Circuit Courts in criminal cases was upon a certificate of division of opinion between the judges of the latter court. And since, if the judges of the Circuit Courts disagreed, there could be no judgment of contempt (California Paving Co. v. Molitor, 113 U. S. 609, 618, 5 Sup. Ct. 618, 28 L. Ed. 1106), it followed that no cases of that character were reviewed by the Supreme Court. With respect to the second class of contempts, the Supreme Court had authority to review such interlocutory judgments or decrees upon an appeal from the final decree in the cause. This, then, was the state of the law upon this subject when the Circuit Courts of Appeals were established, in 1891, and those courts succeeded to a portion of the appellate jurisdiction previously conferred upon the Supreme Court. There is, however, this difference in the appellate jurisdiction of the two courts: The Supreme Court had jurisdiction to review questions occurring on the hearing or trial of a criminal case in the Circuit Court upon a certificate of division of opinion between the judges of the Circuit Court. The Circuit Court of Appeals has jurisdiction, under the act of March 3, 1891, to review final decisions in a criminal case not capital in either the Circuit or District Court, upon a writ of error.

We now proceed to consider the cases where the Circuit Courts of Appeals have had under consideration the question as to their jurisdiction to review decisions of the District and Circuit Courts in contempt proceedings:

The case of Nassau Electric Ry. Co. v. Sprague Electric Ry. & Motor Co., 95 Fed. 415, 37 C. C. A. 146, was an action brought to restrain the infringement of a patent. The Circuit Court of Appeals for the Second Circuit held that the order imposing a fine for the violation of a preliminary injunction in the cause could not be reviewed upon a writ of error; it could only be reviewed upon an appeal from a final decree

in the cause; citing In re Debs, 158 U. S. 573, 15 Sup. Ct. 900, 39 L. Ed. 1092.

In Cary Mfg. Co. v. Acme Flexible Clasp Co., 108 Fed. 873, 48 C. C. A. 118, the same court reviewed, upon writ of error, a judgment of the Circuit Court imposing a fine upon the defendant for a violation of an injunction issued by the court against an infringement of a patent. This proceeding was, however, after the final decree sustaining the patent and adjudging an infringement of the patent in the Circuit Court, and after the affirmance of this final decree in the Circuit Court of Appeals.

In Butler v. Fayerweather, 91 Fed. 458, 33 C. C. A. 625, an attorney was being examined in a case in the Circuit Court, to which he was not a party. He was asked a question which he refused to answer, upon the ground of privilege. For this refusal he was committed for contempt. A writ of error was sued out to review the order of commitment in the Circuit Court of Appeals. The court held that the order proceeded upon a matter distinct from the general subject of litigation; that the aggrieved party would have no opportunity to be heard when the cause should be before the court at the final hearing, and as to him the proceeding was finally determined when the order was made. Not being a party to the cause, he could not be heard on an appeal from the final decree, and, unless he could be heard upon a writ of error, he had no review, but must submit to the determination of the court below, if the court had jurisdiction, however unwarranted it might be by the facts or the law of the case. The court was of the opinion that it had the power to review the order, and upon the merits reversed the judgment of the Circuit Court.

Flower v. MacGinniss, 112 Fed. 377, 50 C. C. A. 291, was a case in the same court. A witness in an equity cause, not a party to the suit, had refused to submit to an examination upon the ground that issues had not been joined in the cause, and the complainant was therefore not entitled to take his testimony. He was adjudged guilty of contempt. A writ of error was sued out to review the order in the Circuit Court of Appeals. The right to review the order by writ of error was sustained, on the authority of its previous decision in Butler v. Fayerweather, supra.

In King v. Wooten, 54 Fed. 612, 4 C. C. A. 519, certain property in the possession of the receiver of a federal court was levied on and sold for taxes by a state sheriff, and the purchaser replevied it from the receiver, who gave a forthcoming bond. The receiver then filed a petition asking the protection of the court appointing him, and, after hearing, it was decreed that the sale was null and void; that the purchaser and sheriff were in contempt of court; that they desist from any interference with the property; that the purchaser dismiss his replevin action, and that the receiver pay all taxes due the sheriff; and that after the purchaser had dismissed said suit, and the defendants had paid all the costs of the proceeding, they, and each and all of them, should stand acquitted of the contempt of court. Respondents appealed to the Circuit Court of Appeals for the Fifth Circuit. The court dismissed the appeal, holding that the proceeding was clearly a contempt proceeding—one which, in the very nature of the case,

must be summary, to be at all effective; that it was manifestly not intended to conclude the ultimate rights of the purchaser at the tax sale, but was only to the effect and extent that he could not in that way dispossess the receiver.

In the recent case of In re Nevitt, 117 Fed. 448, 54 C. C. A. 622, before the Circuit Court of Appeals of the Eighth Circuit, Judge Sanborn delivered an elaborate opinion upon the subject of contempt proceedings in the federal courts. The case came before the court upon the petition of two of the judges of the county court of St. Clair county, in the state of Missouri, and upon the petition of their counsel, for the issue of the writ of habeas corpus to relieve these judges from an imprisonment which they were enduring until such time as they should comply with a mandamus of the United States Circuit Court for the Western Division of the Western District of Missouri, which directed these judges to levy a tax to make partial payment upon a judgment recovered by one Douglas against the county of St. Clair, and to make partial payments upon other judgments of like character based upon certain bonds of the county of St. Clair. One phase of the question before the court was the claim that the contempt of which the judges stood convicted was a "distinct and substantial offense against the United States," and that, as such, it fell within the pardoning power of the President of the United States; and, for the purpose of applying to the President for the release of the petitioners, the appellate court was asked to order a stay of proceedings in the lower court. The court reviews numerous decisions upon the subject of contempt, and disposes of the application for a stay of proceedings in the following language:

"This is not a criminal, but a civil, contempt—a proceeding instituted for the purpose of protecting and enforcing the private rights and administering the legal remedies of the judgment plaintiff, Douglas; and, whatever the authority of the President may be to pardon for a criminal contempt, he is, upon principle and upon authority, without the power to relieve from either fine or imprisonment imposed in proceedings for contempts of this character. He has no more power to deprive private citizens of their lawful rights or legal remedies without compensation than have the courts or the Congress."

The further discussion of the subject of contempt by the court is applicable to the question before this court in the present case. The court says:

"Proceedings for contempt are of two classes—those prosecuted to preserve the power and vindicate the dignity of the courts, and to punish for disobedience of their orders, and those instituted to preserve and enforce the rights of private parties to suits, and to compel obedience to orders and decrees made to enforce the rights and administer the remedies to which the court has found them to be entitled. The former are criminal and punitive in their nature, and the government, the courts, and the people are interested in their prosecution. The latter are civil, remedial, and coercive in their nature, and the parties chiefly in interest in their conduct and prosecution are the individuals whose private rights and remedies they were instituted to protect or enforce. Thompson v. Railroad Co., 48 N. J. Eq. 105, 108, 21 Atl. 182; Hendryx v. Fitzpatrick (C. C.) 19 Fed. 810; Ex parte Culliford, 8 Barn. & C. 220; Rex v. Edwards, 9 Barn. & C. 652; People v. Court of Oyer and Terminer, 101 N. Y. 245, 247, 4 N. E. 259, 54 Am. Rep. 691; Phillips v. Welch, 11 Nev 187, 190; State v. Knight, 3 S. D. 509, 513, 54 N. W. 412, 44 Am. St. Rep. 809; People v. McKane, 78 Hun, 154, 160, 28 N. Y. Supp. 981; 4 Bl. Comm. 285; 7 Am. & Eng. Enc. Law, 68. A criminal contempt involves no element of per-

sonal injury. It is directed against the power and dignity of the court, and private parties have little, if any, interest in the proceedings for its punishment. But if the contempt consists in the refusal of a party or a person to do an act which the court has ordered him to do for the benefit or the advantage of a party to a suit or action pending before it, and he is committed until he complies with the order, the commitment is in the nature of an execution to enforce the judgment of the court, and the party in whose favor that judgment was rendered is the real party in interest in the proceedings."

The court thereupon reaches the conclusion that the proceeding for contempt under which the petitioners were held imprisoned in that case was not criminal in its nature, but civil, remedial, and coercive, instituted and maintained for the purpose of enforcing the private rights of the judgment creditors to the collection of their judgments. The prayer of the petitioners was accordingly denied, and the petitions dismissed.

The case of In re Debs, 158 U. S. 564, 15 Sup. Ct. 900, 39 L. Ed. 1092, and 159 U. S. 251, 15 Sup. Ct. 1039, remains to be considered. A bill in equity had been filed by the direction of the Attorney General of the United States in the Circuit Court for the Northern District of Illinois, alleging that Debs and others had combined and conspired together to obstruct the operation of certain lines of railways engaged in interstate commerce and in carrying the United States mails, and that they threatened to continue to restrain, obstruct, and interfere with interstate commerce and the transmission of the mails. The bill prayed for an injunction, which was issued and served upon the defendants. Subsequently an attachment was issued against the defendants, charging them with violating the injunction, and upon a hearing they were found guilty of contempt of court and sentenced to imprisonment. Petitions were thereupon presented to the Supreme Court of the United States on behalf of the defendants, one for a writ of error, and the other for a writ of habeas corpus. The petition for a writ of error was denied. 159 U. S. 251, 15 Sup. Ct. 1039. The court, in its statement of the case upon the petition for a writ of habeas corpus (158 U. S. 573, 15 Sup. Ct. 900, 39 L. Ed. 1092), states that the petition for a writ of error had been denied on the ground that the order of the Circuit Court was not a final judgment or decree. In support of the petition for a writ of habeas corpus a number of objections were urged to the jurisdiction of the Circuit Court to adjudge the petitioners guilty of contempt of court—among others, that the judgment of the court had invaded the constitutional right of the petitioners to a trial by a jury. The Supreme Court sums up its answer to this objection, and states the law of contempt applicable to such a case, in the following comprehensive language:

"In brief, a court enforcing obedience to its orders by proceedings for contempt is not executing the criminal laws of the land, but only securing to suitors the rights which it has adjudged them entitled to."

In the present case the order of the court provided, in substance, that the Butte & Boston Consolidated Mining Company, through its agents and representatives, should be permitted, during a period prescribed in the order, to survey, examine, and inspect certain underground workings from the Rarus, Johnstown, and Pennsylvania claims, beneath the surface of the Michael Devitt claim, owned by the com-

plainant; and for that purpose such representatives of the complainant were to be permitted to remove or open all doors, bulkheads, or other obstructions which might be found in said premises, obstructing and preventing such examination and survey. The order was for the purpose of enabling the complainant to maintain its legal rights in said premises in the pending suits. The action of the appellants in refusing to comply with this order of the court was a resistance on their part to an adjudicated right in favor of the complainant. But it was provided in the judgment of contempt that the commitment should continue only until they should consent to the inspection, examination, and survey of the underground workings specified in the order, and until they should give the necessary orders and provide the necessary means for making such examination, inspection, and survey, and should permit the removal of the obstructions provided to be removed in said order, or until the further order of the court. It was further provided that, when the appellants should comply with the order of the court, the order should be discharged as to both fine and imprisonment against each and all of said parties, and none of the parties should be further held or chargeable thereunder. As said by the court in In re Nevitt, 117 Fed. 461, 54 C. C. A. 635:

"They carry the keys of their prison in their own pockets. Governments are founded to administer justice. Courts are established to determine the rights and remedies of litigants by peaceable decisions under the law, instead of by the wager of battle. They are not infallible, but no better method of determining adverse claims has yet been devised."

No constitutional right is denied to the appellants in this case. They are not required to furnish evidence against themselves. They are simply to unbar their doors, stand aside, and allow the representatives of the complainant to ascertain whether in the depths below the surface of their own property the defendant in the suit in which this controversy has arisen is not engaged in extracting and carrying away the wealth of the property. The complainant is simply asking to be allowed to establish and protect its own property and rights, and it would be a miserable failure of justice if the court has not the power to enforce obedience to its orders in such a proceeding.

The next question to be considered in this connection is the objection of the appellants that the Johnstown Mining Company is the owner in possession, and entitled to the possession, of the machinery, shafts, premises, and underground workings required to be used, entered, and inspected under said order of survey, examination, and inspection; that said Johnstown Mining Company is not a party to the action; that Josiah H. Trerise and Alfred Frank are not parties to the action, and therefore not subject to the jurisdiction of the court.

The petition for an order of the court for an examination, inspection, and survey of the underground workings and openings in the Rarus and Johnstown claims was presented to the Circuit Court on October 1, 1903. On October 13, 1903, the Montana Ore Purchasing Company, one of the defendants in the action, filed its answer to this petition, in which it denied generally the allegations of the petition, and, among others, denied that it was in possession or control of the shafts or openings in that portion of the Johnstown and Rarus lode

claims lying north of the Michael Devitt lode claim, or extending into the Michael Devitt lode claim; denied that the survey, inspection, and examination mentioned in the petition was necessary for the purpose of the action, or to enable the complainant to prepare the case for trial, or for any matter connected therewith; denied that the defendants or either of them, by means of workings made from the Rarus or Johnstown claims, or any other means, since the service of the injunction in the case, trespassed upon or mined or extracted any ores from within the Michael Devitt lode claim, or any portions of the claim mentioned in the petition. Upon the petition and answer the court on October 14, 1903, made the order of inspection, examination, and survey prayed for in the petition. Then followed the several appeals to this court to set aside the order of inspection. All of these appeals being denied, an attempt was made to execute the order of the court, when the execution of the order was obstructed by the appellants. In the answer of the Montana Ore Purchasing Company to the order to show cause, filed November 2, 1903, it alleged that it was not then, and had not been since the ———— day of August, 1903, in possession of the Rarus shaft or shafts, or any portion of the Rarus claim lying north of the Michael Devitt claim. On the same day the Johnstown Mining Company filed its special appearance in court, in which it denied the jurisdiction of the court over it to enforce obedience to the order of the court, and expressly of any such order as requested by the complainant, and refused to submit itself to the jurisdiction of the court. There are two deeds in the record, executed by the Montana Ore Purchasing Company, by F. Augustus Heinze, president—one dated August 5, 1903, filed for record in the office of the county recorder on October 17, 1903, and the other dated September 1, 1903, filed for record in the office of the county recorder on November 3, 1903. These deeds convey to the Johnstown Mining Company certain portions of the surface and underground veins of the Johnstown and Rarus claims. The Johnstown Company thus became a purchaser pendente lite, and derived its title and possession from the Montana Ore Purchasing Company after issue had been joined in the suit, and the deeds of conveyance were filed of record after the commencement of the proceedings for inspection, examination, and survey. In our opinion, this change of title to a portion of these claims and underground veins, under the circumstances disclosed by the evidence, in no way affects the question before the court. The Johnstown Company, as such purchaser, became subject to all the proceedings and decrees in the suit relating to the property involved in the suit. The original injunction in the case was directed to the Montana Ore Purchasing Company, and its clerks, agents, attorneys, servants, workmen, and lessees. In the proceedings relating to the order of inspection, that corporation undertook at first to represent all opposing interests, and, as we read the testimony in the case, it is still the real party in interest. The appellant F. Augustus Heinze is the president of that corporation. Josiah H. Trerise, another appellant, testifies that he is the superintendent of the corporation; and Alfred Frank, the third appellant, testifies that he is a mining engineer superintendent in the employ of the Montana Ore Purchasing Company and the

Johnstown Mining Company. The court below, in its judgment of contempt, found as a fact that Heinze, Frank, and Trerise had full knowledge and notice of the order of inspection and its terms, and during all the times mentioned in the order they were able to comply with its terms. Equity always attempts to get at the substance of things, and to ascertain, uphold, and enforce rights and duties which spring from the real relations of parties. It will never suffer the mere appearance and external form to cancel the true purpose, objects, and consequences of a transaction. 1 Pom. Eq. Jur. (2d Ed.) § 378.

The conclusion we reach is that the judgment of contempt of court which the appellants seek to have reviewed upon the present writ of error is a judgment in a civil proceeding; that it is remedial and coercive in its execution, and that it has been entered by the court for the purpose of enforcing the private rights of the complainant judicially determined in its favor; and that the appellants are subject to its terms and conditions. It follows that it is a judgment that cannot be reviewed upon this writ of error, and the writ of error is therefore dismissed, with costs to the defendant in error.