**UNITED STATES ex rel. EMANUEL v. JAEGER, U. S. Marshal.**

No. 175.

Circuit Court of Appeals, Second Circuit.

Feb. 10, 1941.

484

Max Shlivek, of New York City (Shlivek & Brin and Saul S. Brin, all of New York City, on the brief), for relator-appellant.

Nathan Weidenbaum, of New York City (Benjamin F. Steinberg, of New York City, on the brief), for respondent-appellee.

Before SWAN, CHASE, and CLARK, Circuit Judges.

CLARK, Circuit Judge.

The relator herein is the president and sole stockholder of Martin Clothes, Inc., which in the fall of 1937 filed a petition in the court below for reorganization under the then § 77B of the Bankruptcy Act, 11 U.S.C.A. § 207. Proceedings in connection with that reorganization and involving one Frank Raskin have now led to the judgment of commitment for contempt against the relator, from which he seeks relief on

this writ of habeas corpus. Raskin was not originally, and seemingly never formally, a party to the reorganization proceedings; his interest arises, initially at least, by virtue of a written agreement made November 24, 1937, between him and the relator, whereby he agreed to furnish the necessary cash to consummate the reorganization. Relator's commitment was occasioned by his failure to comply with an order of the bankruptcy court that he refund to Raskin the money advanced by the latter and pay certain expenses in connection therewith. He attacks this order as beyond the jurisdiction of the court in bankruptcy.

The agreement of November 24, 1937, provided that Raskin was to deposit $2,500 with the clerk of court to provide a 30 per cent cash payment to creditors as soon as a plan of reorganization to that effect should be accepted and confirmed; that relator's stock, to be held in escrow until confirmation of the plan, should then be delivered to Raskin to hold until relator had reimbursed him, and thereafter to be returned to relator; and that until Raskin was paid, relator should work for the business at a fair and reasonable salary. After it was made, Raskin made the required deposit with the clerk, though only $1,500 was his own money, since $1,000 was supplied by relator's father-in-law, Feldman. Thereafter the plan of reorganization was modified to substitute for the 30 per cent cash settlement with creditors a combined cash and note settlement of 20 and 10 per cent respectively, with notes of 5 per cent each of the debtor, endorsed by relator, relator's wife, and Feldman, payable March 20 and April 20, 1938, respectively. The creditors accepted the amended plan and the court confirmed it on February 3, 1938. In its order of confirmation, the court directed the clerk to pay to the debtor the money theretofore deposited "for the purpose of debtor making distribution and payments to creditors under said Amended Plan of Reorganization and under this order." Relator asserts, and it is not challenged, that debtor, upon receipt of the deposit, distributed it to the creditors as ordered, delivered the notes as required and paid them when they came due, and paid priority claims, as well as administration expenses, in full in accordance with the plan.

On February 15, 1938, Raskin applied to the district court for a resettlement of the confirmation order, on the grounds that he had not been served with a copy of the proposed order, and that the changes in the plan, described above, had been made without his consent. The court referred his application to a special master to hear and report. After extensive hearings the master reported, and the court on December 6, 1938, made an order, which went quite beyond a mere resettlement of the confirmation order. In this order the debtor was directed to pay to Raskin $1,500, representing the sum advanced by him, $125 representing an additional loan, and $115 for a copy of the stenographic record obtained for the special master, and to the special master, court reporters, and Raskin's attorney fees in the amount of $1,302.50, or a total of $3,042.50. The quite inadequate record before us does not explain why this order was passed at a time when the creditors had apparently received the full 30 per cent payment for which Raskin had stipulated.

Thereafter Raskin moved for a resettlement of this order so that it might include a direction to require not only the debtor, but also the relator individually, to make the stated payments. Relator asserts that this step was taken only after an attempt to have him adjudged in contempt for failure to make the payments had failed because the court held that the original order applied only to the debtor corporation. The new application was granted on April 17, 1939, in a resettled order wherein relator individually and the debtor corporation were severally and jointly directed to make the said payments, and were further directed to deliver to Raskin "the property, books, and papers of the Debtor herein." A motion to punish them for contempt, originally returnable on July 12, 1939, eventually resulted in an order on September 26, 1939, which found them both in contempt, and provided that as punishment they "were jointly and severally fined the sum of $3,042.50," relator, however, to be permitted to purge himself by paying the amount of the fine at the rate of not less than $40 a month. Relator made payments amounting to only $140. On August 10, 1940, the court passed its order directing the United States marshal to apprehend relator and to confine him in the Federal House of Detention until he paid the balance of his fine and the marshal's expenses, or "until the further orders of this court."

Between the entry of the contempt order and the commitment order there were fur-

ther proceedings in the way of motions by relator for modification of the order, for reargument, and for the taking of testimony on the subject of the delivery of the books, records, and papers. These motions were all denied. Whether the books, records, and papers remained undelivered is not clear; the commitment order, while reciting the earlier order which included them, is in terms based upon relator's failure to purge himself of contempt by paying his fine. Again on June 5, 1940, just after the court had ruled that it would order commitment unless the arrears were paid within two weeks, relator moved for a reargument of all the applications by Raskin and all the prior orders. This motion the court denied, as relator alleges, "in a memorandum decision, holding that he did have jurisdiction over the proceedings instituted by Frank Raskin." No appeal was taken from any of these orders of the bankruptcy court. The petition for this writ came before another district judge, who expressed doubt as to the jurisdiction of the bankruptcy court over payments of money required by the agreement, but thought that the provision to turn over the stock and papers was sufficient to give the court jurisdiction over the whole subject matter.

From the brief record herein, limited in substance to the facts set forth in relator's petition and an affidavit filed by Raskin in the earlier proceedings, somewhat supplemented by the recitals of the commitment order, we are left in the dark as to the legal basis for the orders of the bankruptcy court. It is unfortunate that an appeal involving personal liberty should be presented on so scanty a record. The facts before us indicate error in the action taken against the relator; our real problem is to determine whether or not this amounts to a jurisdictional defect open to collateral attack. We address ourselves first to the resettled order of April 17, 1939, for that is the first command directed against the relator personally.

■■■ We have not before us either the application for that order or the complete order itself. Since the question of jurisdiction had previously been raised, it would appear that the court passed upon it; at any rate it did so upon the application for reargument in 1940 and found in favor of its jurisdiction. Just the grounds upon which it went are not clear. The arguments and allegations of the parties seem to suggest one or both of two grounds: (1) enforcement of the original agreement with Raskin, and (2) identity of relator with the debtor corporation of which he was president and sole stockholder. We do not believe either ground singly or both together are adequate to support the order so far as it required relator to make refund of the loan to Raskin and to pay the expenses in connection therewith. There would be also requisite a finding that relator himself had had possession of the funds in question. The finding said to have been made that the debtor corporation "was only a medium or a conduit used by" relator seems to be nothing more than a conclusion as to this form of legal and business device which in itself discloses nothing sinister. Corporations at best are only mediums or conduits whereby individuals carry on their affairs. And a violation of the agreement, so far as relator is concerned, is only a contractual breach on a matter collateral to the bankruptcy and hence not within its authority. Nixon v. Michaels, 8 Cir., 38 F.2d 420; In re Railroad Supply Co., 7 Cir., 78 F.2d 530; Smith v. Chase National Bank, 8 Cir., 84 F.2d 608.

■■ It is said that the plan of reorganization, while not referring to Raskin by name, did, however, recognize the obligation to him incurred by the debtor and his rights in the stock, the books, and the papers of debtor. That might well justify an order for a refund on non-consummation of the plan or for delivery of physical things, and the bankruptcy court surely retained jurisdiction under former § 77B, sub. a, to revoke its confirmation of the original plan twelve days after it had been had. True, it is not clear why the essential features of the agreed-upon plan had not been carried out, nor how the lender could get back both his money and the security for it; but that would appear to be at most error, not a defect of jurisdiction. And since it is natural to expect the president and sole stockholder of a corporation to be able to turn over its physical assets, an order as to them might go against the president; at least we held in Re Arctic Leather Garment Co., 2 Cir., 89 F.2d 871, that lack of finding of the officer's possession of corporate bonds and his own stock was only formal and did not vitiate a turnover order. See also In re Byrd Coal Co., 2 Cir., 83 F.2d 190, 192.

But even if this part of the order is justified, it is not the part upon which the actual commitment was based; and in any event, where an order is partly within and partly without the court's jurisdiction, the part without is void. In re Bonner, 151 U.S. 242, 257, 14 S.Ct. 323, 38 L.Ed. 149. The remainder of the order, as we view it, must assume that relator had possession of the deposit received from the court. That appears to be contrary to the statement that *debtor* received it and distributed it to the creditors, presumably long before this hearing, which came a year and a half after the original confirmation order. It involves in substance a holding that relator had taken trust funds in violation of the court's order. If still open, we should certainly be loath so to hold on the basis of anything appearing in this record. True, Raskin does make charges that debtor's store was closed, and all the merchandise and fixtures removed, while the hearings were proceeding before the master, and again that relator at some time misappropriated more than $1,100 over a period of six weeks after the trustee had been removed. These apparently unconnected allegations are tied together in respondent's brief to show that they referred to the physical assets of the corporation and had no connection with the fund for the cash payment to creditors. We have already referred to the "conduit" theory; we see nothing else affording any justification for such a conclusion.

Nevertheless it appears on the authorities that, however harsh may be the result as to the relator herein, that issue is not open to collateral attack. What we have said indicates that in an appropriate case the bankruptcy court could have made the order in question. It is now well settled that on contempt proceedings no attack can be made on the regularity, correctness, or validity of the original order. Oriel v. Russell, 278 U.S. 358, 49 S.Ct. 173, 73 L.Ed. 419, affirming In re Oriel, 2 Cir., 23 F.2d 409, 413; In re Siegler, 2 Cir., 31 F.2d 972; In re Arctic Leather Garment Co., supra; Id., 2 Cir., 106 F.2d 99; cases collected 3 Moore's Collier on Bankruptcy, 14th Ed., 535–537. A like rule applies to habeas corpus proceedings; they cannot be used to review, as on appeal, the court action which has led to the commitment order. Craig v. Hecht, 263 U.S. 255, 44 S. Ct. 103, 68 L.Ed. 293, affirming Ex parte Craig, 2 Cir., 282 F. 138; Ex parte Kearney, 7 Wheat. 38, 20 U.S. 38, 5 L.Ed. 391; United States ex rel. Paleais v. Moore, 2 Cir., 294 F. 852.

Relator has appealed from neither the commitment nor the contempt order; he therefore can raise here the issue of jurisdiction only. Yet he had opportunity to and did raise that issue in the prior proceedings, and the court found against him. Even if we assume that the court was acting upon erroneous grounds as indicated above, yet Stoll v. Gottlieb, 305 U.S. 165, 59 S.Ct. 134, 83 L.Ed. 104, makes it clear that the matter is settled against collateral attack. There the issue whether or not the bankruptcy court could release a guarantor in reorganization from his guaranty was decided by the Court in favor of its jurisdiction. Yet the Supreme Court holds that, even if that ruling be erroneous, and the matter without the power of a bankruptcy court (In re Diversey Bldg. Corp., 7 Cir., 86 F.2d 456; In re Nine North Church Street, Inc., 2 Cir., 82 F.2d 186), the issue cannot be raised collaterally. The situation seems the same as that here presented. Later decisions of the Court reiterate and reinforce this conclusion. Jackson v. Irving Trust Co., Jan. 6, 1941, 61 S.Ct. 326, 85 L.Ed. —; Chicot County Drainage Dist. v. Baxter State Bank, 308 U.S. 371, 378, 60 S.Ct. 317, 84 L.Ed. 329; cf. 40 Col.L.Rev. 1006, 1008; 53 Harv.L. Rev. 652, 659; 49 Yale L.J. 959; and see also Ripperger v. A. C. Allyn & Co., 2 Cir., 113 F.2d 332, certiorari denied 61 S. Ct. 136, 85 L.Ed. —; Commercial Cable Staffs' Ass'n v. Lehman, 2 Cir., 107 F.2d 917, 921.

Hence we conclude that the commitment order was authority, not subject to attack herein, for the marshal to hold the relator in his custody. The dismissal of this writ must therefore be affirmed. It would seem, however, that the relator is not wholly without remedy. The recitals herein indicate that the bankruptcy court retained jurisdiction of all proceedings in connection with the reorganization after it had assumed to pass upon the plan. It may be that jurisdiction once more to resettle the original turnover order exists. Since, so far as the record shows, the issue of relator's possession of the money has never been tried out, as his various objections were apparently based on a misapprehension of his legal rights, it would seem appropriate for the

court to reconsider that issue if it still retains jurisdiction so to do. In any event the original contempt order was of a continuing nature and the order of commitment was expressly made subject to further orders of the court. It would seem, therefore, that the bankruptcy court may properly be appealed to for action in the light of the considerations we have herein set forth. Present inability to perform has been considered an appropriate defense to a contempt proceeding. Oriel v. Russell, supra; In re Byrd Coal Co., 2 Cir., 83 F.2d 256; 3 Gerdes on Corporate Reorganizations § 1274; cf. United States ex rel. Paleais v. Moore, supra; In re Roxy Liquor Corp., 7 Cir., 107 F.2d 533. Under the circumstances it seems appropriate that no costs be taxed on this appeal, and we so direct.

Affirmed.