UNITED STATES ex rel. SUTTON v. MULCAHY et al. (MENASHE, Impleaded— Appellee).

No. 264, Docket 20975.

Circuit Court of Appeals, Second Circuit.

June 30, 1948.

FRANK, Circuit Judge, dissenting.

———◆———

Hartman, Sheridan, Tekulsky & Donoghue, of New York City (Peter J. Donoghue, Lewis H. Ullman, and Irwin Nussbaum, all of New York City, of counsel), for appellant.

George A. Ferris, of New York City (Albert Adams, of New York City, of counsel), for respondent-impleaded-appellee.

Before SWAN, CLARK, and FRANK, Circuit Judges.

SWAN, Circuit Judge.

By writ of habeas corpus the relator sought release from imprisonment under an order which adjudged him in civil contempt of court, imposed a fine of $22,000, and committed him to jail until the fine should be paid or he should be discharged according to law. The contempt was committed in a suit brought by Jack Menashe against the relator and others to obtain the appointment of an ancillary receiver in aid of a suit for partnership accounting which was pending in the circuit court of the First Judicial Circuit in the Territory of Hawaii. In the habeas corpus proceeding Menashe was impleaded as a respondent, and he is the appellee who actively opposes the relator's appeal from the order discharging the writ. The appellant's contention is that the court which adjudged him in contempt lacked jurisdiction.

Although the record on appeal makes a wholly inadequate disclosure of the proceedings in what we shall for convenience call the "ancillary suit," it has been possible to piece together what is believed to be an accurate statement. The complaint in the ancillary suit alleged that Menashe resided in New York and Sutton in the Territory of Hawaii,[1] referred to the suit for a partnership accounting brought by Menashe in Hawaii, the appointment of a receiver therein who was still acting as such, and the existence of partnership assets within the city of New York; it prayed for the appointment of an ancillary receiver of all partnership assets and for an injunction restraining the defendants from interference with such ancillary receiver. On January 10, 1947 Judge Rifkind appointed a temporary ancillary receiver. Sutton then moved to vacate the appointment and to dismiss the complaint for lack of jurisdiction. Judge Hulbert overruled this motion on February 5, 1947 with an opinion reported in Menashe v. Sutton, D.C., 71 F.Supp. 103. Thereafter Sutton filed his answer asserting that he is a resident of the state of New York, but later withdrew it and filed a paper entitled "Consent to Judgment." In July 1947, over the plaintiff's objection, a judgment was signed by Judge Holtzoff, sitting in the southern district by assignment, which "granted judgment against the defendants * * * for the relief demanded in the complaint," made permanent the appointment of the temporary ancillary receiver and directed that partnership assets be delivered to him. On September 11, 1947 Judge Medina made an order appointing a special master to take testimony for the purpose of discovering assets of the partnership, and directing Sutton to appear before the special master to give testimony. A temporary stay of that order was granted to enable the defendants to apply for a stay pending appeal but we denied the stay on the

---

[1] Thus there was diversity of citizenship under 28 U.S.C.A. § 41(1), if the 1940 amendment is valid. In two circuits, by a divided court, the amendment has been held unconstitutional. Central States Co-ops. v. Watson Bros. Transp. Co., 7 Cir., 165 F.2d 392; National Mut. Ins. Co. v. Tidewater Transfer Co., 4 Cir., 165 F.2d 531.

ground that the order of September 11th was not appealable. After hearings before the special master, Menashe brought on a motion to punish Sutton for a civil contempt in wilfully disobeying Judge Medina's order of September 11th by refusing to answer questions and by answering evasively and without candor or good faith. This motion was heard by Judge Coxe who entered an order on November 21, 1947 adjudging Sutton guilty of a civil contempt, fining him $22,000 and directing him to pay the fine to the permanent ancillary receiver, ordering that in default of payment he be taken into custody by the United States Marshal and confined in a federal jail, and granting Sutton an opportunity to purge himself of his contempt by testifying fully and not evasively before the special master. On December 11, 1947 Sutton appeared before the special master but refused on advice of counsel to answer any questions propounded by the attorney for Menashe. On December 15, 1947 Judge Coxe signed the commitment order. Sutton thereupon sued out the writ of habeas corpus to which the respondents made return setting out the commitment of December 15th and the fact that the fine had not been paid. After hearing the writ was dismissed by Judge Clancy.

What Sutton has attempted to do is to use the writ of habeas corpus to attack collaterally the district court's decisions that it had jurisdiction to appoint the temporary ancillary receiver, 71 F. Supp. 103, and to make permanent his appointment by the judgment of July 21, 1947. Those orders were appealable. See 28 U.S.C.A. § 227; Pacific Northwest Packing Co. v. Allen, 9 Cir., 109 F. 515; Sutton did not see fit to appeal from them but sought to attack them collaterally. Where the question of jurisdiction has been litigated, that issue is ordinarily immune from collateral attack. United States v. Jaeger, 2 Cir., 117 F.2d 483, 487 and cases there cited. In Sunal v. Large, 332 U.S. 174 at 179, 67 S.Ct. 1588 at 1591, 91 L.Ed. 1982, the court said that "the situations in which habeas corpus has done service for an appeal are the exceptions," adding "Thus where the jurisdiction of the federal court which tried the case is challenged or where the constitutionality of the federal statute under which conviction was had is attacked habeas corpus is increasingly denied in case an appellate procedure was available for correction of the error." Although the writ may still be availed of, despite neglect to appeal, in exceptional cases,[2] we do not think the present is such a case. Accordingly · the judgment is affirmed.

CLARK, Circuit Judge (concurring).

With not a few doubts about this tangled case, unfortunately not clarified by the record, I have finally come to the conclusion that Judge Swan states the proper result now to be reached on the authorities by an intermediate court and that further exposition of the law, if necessary, must come from the Supreme Court. My doubts center about the fact that if the 1940 amendment to 28 U.S.C.A. § 41(1) is invalid,[1] there would appear to be a lack of subject matter jurisdiction over the original action leading to the relator's imprisonment until the heavy fine imposed is paid. For the ground taken below, Menashe v. Sutton, D.C.S.D.N.Y., 71 F.Supp. 103, to the effect that appointment of an "ancillary" receiver needed no separate basis of federal jurisdiction, seems unsound. Raphael v. Trask, 194 U.S. 272, 278, 24 S.Ct. 647, 48 L.Ed. 973; Kelley v. Queeney, D.C.W.D. N.Y., 41 F.Supp. 1015, 1018.[2] My law-school teachings were that a judgment showing on its face lack of jurisdiction of the subject matter was void for all purposes.

[2] United States ex rel. Stabler v. Watkins, 168 F.2d 883.

[1] The issue is now before the Supreme Court on grant of certiorari, 68 S.Ct. 746, in the National Mut. Ins. Co. case; it has quite divided the district courts and the law reviews, though it was suggested in 55 Yale L.J. 600, 603, in 1946, that the Court might "well resolve this divergence among the lower judiciary by

declaring an act of Congress unconstitutional for the first time since 1936."

[2] The district court's reliance on a brief quotation from Judge L. Hand's opinion in Goldman v. Staten Island Nat. Bank & Trust Co., 2 Cir., 98 F.2d 496, 497, seems misplaced, because there appears to have been already in the district a proper ancillary receiver appointed where diversity of citizenship appeared. Cf.

See cases discussed by Justice Rutledge, dissenting, in United States v. United Mine Workers of America, 330 U.S. 258, 351–363, 67 S.Ct. 677, 91 L.Ed. 884. But I guess Judge Swan does more nearly state the current view. And it must be conceded that relator did have plenty of opportunity to continue upon appeal the issue he had already raised below, just as he had opportunity later—at the time of entry of the order of commitment—to show an inability to pay the fine, if such there was, under the principles of Maggio v. Zeitz, 333 U.S. 56, 68 S.Ct. 401.

FRANK, Circuit Judge (dissenting).

1. Both my colleagues assume (I think correctly) that the district court had no jurisdiction of the ancillary receivership suit.[1] Yet they conclude that Sutton can have no relief whatever from the commitment order of December 15, 1947 (entered in that suit) which sent him to jail.

A casual reader of my colleagues' opinions may not comprehend their full import. He may believe that they rely on the fact that Sutton "carried the key to his prison in his own pocket," i.e., that, by testifying (although belatedly) in accord with the order of September 11, 1947, he could have purged himself of his contempt and thus avoided jailing pursuant to the December 15, 1947 order; but this Sutton could not do, for that commitment order omitted the purging provision of the previous November 11 order (which Judge Swan describes) and thus gave Sutton but two alternatives —to pay a $22,000 fine to the marshal or go to jail.[2] To be sure, if he had possessed $22,000, by paying it to the marshal he could have avoided being jailed. But, for all we know, he did not have that much money; and, since the fine was imposed for contempt in refusing to testify, and not to compel payment of funds wrongfully withheld by Sutton,[3] I gravely doubt whether the idea suggested in Maggio v. Zeitz, 333 U.S. 56, 68 S.Ct. 401 (cited by Judge Clark) applies, i.e., I doubt whether the district court (questions of jurisdiction aside) would have been obliged not to jail him if he had proved his inability to pay the fine. Moreover, if he paid it, then, if my colleagues' position (as explained in the next para-

---

Prudential Ins. Co. of America v. Liberdar Holding Corp., D.C.E.D.N.Y., 6 F. Supp. 903, and id., 2 Cir., 85 F.2d 504.

[1] Appellees contend that federal jurisdiction exists because the suit is ancillary to the receivership action in the Hawaiian court. I think that contention unfounded. See Raphael v. Trask, 194 U. S. 272, 278, 24 S.Ct. 647, 48 L.Ed. 973. Kelley v. Queeney, D.C., 41 F.Supp. 1015, 1018; cf. Mitchell v. Maurer, 293 U.S. 237, 243, 55 S.Ct. 162, 79 L.Ed. 338. Appellees cite Goldman v. Staten Island National Bank, 2 Cir., 98 F.2d 496, 497. But the record in that case contains nothing to indicate an absence of diversity of citizenship and the briefs in that case do not discuss the matter.

As noted in my colleagues' opinions, two Circuits have held unconstitutional the 1940 amendment to 28 U.S.C.A. § 41(1). Those decisions dealt with that part of the amendment relating to the District of Columbia. As to that part of the amendment which relates to the territories the argument for unconstitutionality seems even stronger.

[2] The December 15 order reads as follows: "Ordered, that by reason of the misconduct, disobedience, neglect and refusal of the defendant, Murad A. Sutton,

both individually and as Trustee of Sutton Trusts, to comply with the terms of the said order of the Hon. Alfred C. Coxe, dated the 21st day of November, 1947, the said defendant, Murad A. Sutton, be and he hereby is committed to the Federal House of Detention, located at 427 West Street, New York, N. Y., there to remain charged with contempt until he shall have paid to the United States Marshal in the jurisdiction in which he shall be found and by whom he shall be arrested with sum of $22,000.00, together with the legal fees of the said Marshal; and it is further Ordered, that the United States Marshal to whom a certified copy of this order shall be delivered shall forthwith, on receipt thereof, and without further process, take the body of the said defendant, Murad A. Sutton, and imprison it in the said jail, where he shall remain until the said fine of $22,000.00, together with the Marshal's legal fees, shall actually be paid or until he shall be discharged according to law." (Emphasis added.)

This order also differs from the November 11 order which directed that the fine be paid to the permanent ancillary receiver, not to the marshal.

[3] See footnote 7, infra.

graph) were correct, he would never be able to recover it on a showing of the court's lack of jurisdiction.

A casual reader of my colleagues' opinions may also suppose that they decide merely this: When the December 15 commitment order was made, Sutton chose the wrong remedy, i.e., he should then, on jurisdictional grounds, have attacked that order directly by an appeal therefrom instead of attacking it collaterally (as he did) via habeas corpus. But again such a reader would err, for my colleagues go much further: Although they assume that the district court lacked jurisdiction, they hold that, on December 15, when the court made the commitment order, it was impossible for Sutton to attack that order, *on jurisdictional grounds,* either by an appeal or by habeas corpus. My colleagues reason that Sutton was barred from such a direct or indirect attack (1) because he had previously neglected to take a timely appeal from one or the other of two earlier appealable interlocutory orders (appointing, respectively, a temporary and a permanent ancillary receiver) and (2) because on such a previous appeal, he could have raised the jurisdictional issue. In other words, according to my colleagues, the flaw in Sutton's efforts to escape jail, because of the jurisdictional defect in the December 15 order, does not stem from his failure to appeal from the December 15, order but from his failure to appeal from the earlier orders.[4] Doubtless, my colleagues would hold that on an appeal from the December 15 order (if it was appealable, a matter I shall discuss *infra)* Sutton could have raised non-jurisdictional objections; but there may be no such objections. The question here is whether he is precluded from asserting the jurisdictional defect.

My colleagues' view of this case, stated more in detail, is as follows: A federal court, having no jurisdiction of the subject matter of a suit, erroneously makes a non-appealable order which denies defendant's motion to dismiss the complaint for this want of jurisdiction. Thereafter, the court in that suit, enters two orders, appointing receivers, which, although interlocutory, are appealable under a special provision of the statute governing appeals (28 U.S.C.A. § 227). From neither of those orders does defendant appeal. The court subsequently enters an order which directs the defendant to answer questions in that suit. That order, because interlocutory and not within the special statutory provisions as to appeals from interlocutory orders, is not appealable, as this court holds when defendant promptly seeks to appeal therefrom.[5] With that appeal dismissed by this court, defendant then refuses to obey the order to testify. For disobeying that order, the court makes an order that the defendant shall pay the marshal a large fine or go to jail. That commitment order is not grounded on defendant's disobedience of the earlier interlocutory orders from which he might properly have appealed. On these facts, my colleagues rule thus: By not appealing from either of those two earlier appealable interlocutory orders, defendant is so completely estopped to question the court's lack of jurisdiction that he is entitled to no relief of any kind, based on that lack of jurisdiction, from the commitment order of that jurisdiction-less court.

In short, my colleagues hold that Sutton forever lost his right to complain of the district court's want of jurisdiction to make the order commanding him to testify and the order punishing him for refusing to do so, solely for the reason that he had not appealed from either of the two previous appealable interlocutory orders which, ex hypothesi, were void—despite the fact that neither the later non-appealable order of which he was held in contempt nor the still later commitment order punishing him had its foundation in a violation of either of those previous appealable interlocutory orders.

2. I do not agree. If (as my colleagues assume) the district court had no jurisdiction of the subject matter of the ancillary

---

[4] Perhaps in this respect *Judge Clark* disagrees with Judge Swan. Perhaps Judge Clark means that Sutton, instead of seeking release by habeas corpus, should have appealed from the December 15 order, and that, if he had done so, he could have raised the jurisdictional issue.

If that is Judge Clark's position, my answer will be found in points 3 and 4, infra.

[5] See infra.

receivership suit, then it is horn-book learning that Sutton was powerless, by any affirmative act, to confer such jurisdiction, i.e., to waive that deficiency by an express consent or by a general appearance. It is strange, then, that my colleagues should hold that, by Sutton's mere inaction—by his not appealing in time from an earlier void interlocutory order—he effectively conferred on that court the power to make an order which is forever jurisdictionally unassailable and thus jurisdictionally valid for all practical purposes.

This is not a case like United States v. United Mine Workers, 330 U.S. 258, 67 S.Ct. 677, 91 L.Ed. 884, where there was a violation of an order described by the Supreme Court as one made by the district court "for the purpose of preserving existing conditions pending a decision upon its own jurisdiction."[6] Nor is it a case of commitment for violation of an injunction order, or of an order to turn over funds wrongfully withheld, where the violated order (a) might have been appealed but was not, as in United States v. Jaeger, 2 Cir., 117 F.2d 483, 487, cited by Judge Swan, or (b) was appealed and decided adversely to the appellant, as in Maggio v. Zeitz, 333 U.S. 56, 68, 68 S.Ct. 401.[7] For, as we saw, Sutton's commitment was not for non-compliance with an appealable order. Indeed, as previously indicated, he did promptly appeal to this court from the September 11 order which directed him to testify; on that appeal, he made a motion for a stay of that order; we denied that motion on October 13, 1947, holding that order interlocutory and, on that ground, not appealable.[8]

Nor is my colleagues' harsh ruling justified by any considerations of policy relating to judicial administration: It is obvious that Sutton felt no bite in either of the earlier void interlocutory orders appointing a receiver; that he regarded those orders as not in any way practically affecting him and, indeed, consented to the order appointing the permanent ancillary receiver; and that he concluded, as any sensible man would in the circumstances, not to incur the expense of appealing from either of those orders. He first felt the bite of the suit when, later, the court, on September 11, 1947, made an order directing him to testify before the special master (an order from which, as above noted, he promptly sought, unsuccessfully, to appeal). The suit put an even more severe bite on him when the district court sent him to jail for his refusal to testify. I think it not required by the authorities, and most unjust, to hold, as my colleagues do, that, merely because a party does not appeal from a void interlocutory order (void for lack of jurisdiction of the suit) which he properly considers innocuous, he is precluded from attacking, on jurisdictional grounds, a subsequent void order, made in the same suit, which results in his imprisonment, but not for violation of the earlier appealable order.

3. There remains the question (which my colleagues do not discuss) whether, if what I have said thus far is correct, Sutton could properly attack the December 15 order by way of habeas corpus rather than by appeal from that order. For the following reasons, I find the answer to that question not entirely clear: (a) It would seem that, if that order was not appealable, he

6 See 330 U.S. at 290, 67 S.Ct. at 694, 91 L.Ed. 884; see also the concurring opinion of Frankfurter, J., 330 U.S. at pages 310, 311, 67 S.Ct. at pages 704, 705.

Perhaps the doctrine of the United Mine Workers case is further limited to a case where (see 330 U.S. pages 303, 67 S.Ct. page 701) the defendant adopts a "policy of defiance" which amounts to "an attempt to repudiate and override the instrument of lawful government in the very situation in which governmental action was indispensable."

7 Both the November 11 order and the December 15 order show that the fine was imposed solely for refusal to comply with the order requiring Sutton to testify. There is at most the intimation, in an affidavit, filed in the district court, of one of appellee's counsel, that the amount of the fine was determined by the amount of alleged withdrawals of partnership funds by Sutton in violation of an injunction contained in the order of January 10, 1947, which appointed the temporary ancillary receiver.

8 See United States v. Alexander, 201 U.S. 117, 26 S.Ct. 356, 50 L.Ed. 686.

could properly use habeas corpus at least to raise the jurisdictional question.[9] (b) In Hickman v. Taylor, 3 Cir., 153 F.2d 212,[10] the Third Circuit (citing Union Tool Company v. Wilson, 259 U.S. 107, 42 S.Ct. 427, 66 L.Ed. 848), held appealable a commitment order which resembles the December 15 order here.[11] The Supreme Court granted certiorari and, in affirming the decision of the Third Circuit, accepted, sub silentio, its conclusion as to appealability. (c) It is not altogether easy, however, to reconcile that conclusion with other explicit Supreme Court decisions.[12] (d) If the December 15

---

[9] Ex Parte Fisk, 113 U.S. 713, 5 S.Ct. 724, 28 L.Ed. 1117; cf. Doyle v. London Guarantee Co., 204 U.S. 599, at 608, 27 S.Ct. 313, 51 L.Ed. 641. See comment on the Fisk case at end of note 13, infra.

[10] Cf. O'Malley v. Chrysler Corp., 7 Cir., 160 F.2d 35, 36.

[11] There the defendants and their counsel refused to comply with a district court order directing them to answer interrogatories and to produce certain papers. For that refusal the district court ordered them jailed until they complied.

[12] In Craig v. Hecht, 263 U.S. 255, 44 S.Ct. 103, 68 L.Ed. 293, the Court said that, if the contempt is a criminal contempt, appeal will lie. But a commitment order like the one here, with respect to a party to the suit, seems to have at one time been held to constitute a civil contempt and, as such, to be interlocutory and non-appealable. See Doyle v. London Guarantee & Accident Co., 204 U.S. 599, 603, 27 S.Ct. 313, 314, 51 L. Ed. 641. There the defendants, having failed to comply with an order to produce books and records, were held guilty of contempt; the trial court ordered that, unless within a stated time they complied, they should pay a fine or be imprisoned for sixty days. The Supreme Court, in holding the order not appealable to the Circuit Court of Appeals, said that "an order punishing for contempt, made in the progress of the case, when not in the nature of an order in a criminal proceeding, is regarded as interlocutory, and to be reviewed only upon appeal from a final decree in the case. Matter of Christensen Eng. Co. [194 U.S. 458, 24 S.Ct. 729, 48 L.Ed. 1072]."

However, the ruling in the Doyle case seems to have been modified in Union Tool Co. v. Wilson, 259 U.S. 107, 42 S.Ct. 427, 428, 66 L.Ed. 848. There the defendant company in a patent suit had been enjoined from infringement. The district court found defendant guilty of contempt in violating the injunction, ordered it to pay the clerk $5,000 as a fine, and that, out of this sum, $2,500 be paid the plaintiff "as a reasonable portion of the expenses incurred" by him in the contempt proceeding, and ordered that, if the fine were not paid within twenty days, the defendant's president should be committed to jail, there to be confined until the fine was paid. The Court said that the order was in part remedial and in part punitive; that, in such circumstances, the "criminal feature of the order is dominant and fixes its character for purposes of review"; and that "an order punishing one criminally for contempt, is a final judgment." And see Cogen v. United States, 278 U.S. 221, 224, 49 S.Ct. 118, 119, 73 L.Ed. 275: "It is only when disobedience happens to result in an order punishing criminally for contempt, that a party [to the suit] may have review by appellate proceedings before entry of the final judgment in the cause. Union Tool Co. v. Wilson, 259 U.S. 107, 110, 111, 42 S.Ct. 427, 66 L.Ed. 848."

In Fox v. Capitol Co., 299 U.S. 105, 57 S.Ct. 57, 81 L.Ed. 67, after obtaining a money judgment, the plaintiff brought supplementary proceedings in aid of the judgment; the defendant refused to respond to a subpoena; the trial court adjudged the defendant in contempt with leave to purge himself; later, when the contempt continued, the court made a second order fining the defendant, for his contempt, in the amount due under the judgment plus the costs of the proceeding; this order provided that the defendant was to be jailed until payment of the fine, with the proviso that, except for the costs, the fine would be remitted upon submission to the subpoena. The Court held the two orders non-appealable, saying: "The rule is settled in this Court that except in connection with an appeal from a final judgment or decree, a party to a suit may not review upon appeal an order fining or imprisoning him for the commission of a civil contempt. Doyle v. London Guarantee & Accident Co., 204 U.S. 599, 27 S.Ct. 313, 51 L. Ed. 641; In re Christensen Engineering Co., 194 U.S. 458, 24 S.Ct. 729, 48 L.Ed. 1072; Hayes v. Fischer, 102 U.S. 121, 26 L.Ed. 95; Worden v. Searls, 121 U.S. 14, 25, 7 S.Ct. 814, 30 L.Ed. 853. The appellant in the court below, the petitioner before us here, was a party to a suit or proceeding for the discovery of assets. There is no occasion to consider how far his rights and remedies would be different if he had been a stranger to the record, a witness or an adverse claimant. Nelson v. United States, 201

commitment order was appealable, and if the time for such an appeal had expired, then perhaps habeas corpus was not available.[13] Here, however, when Sutton appealed from the order dismissing the habeas corpus writ, there was still ample time to appeal from the December 15 commitment order; accordingly, it cannot be said that he tried to use habeas corpus as a substitute for an appeal which, because of lapse of time, was no longer open to him. In the light of all the foregoing, I incline to think (but I am not sure) that he properly resorted to habeas corpus. If so, we should reverse with directions to release him.

4. Perhaps it is true, however, that Sutton's counsel chose the wrong ladder from the district court to this court, i.e., that he should have proceeded by an appeal from the December 15 order. If so, the mistake is understandable, in the present state of the authorities. I cannot believe that, for such a mistake, we must penalize Sutton, saying to him: "If your lawyer had followed the course pursued in Hickman v. Taylor—i.e., if, by adding a few words to the notice of appeal, he had appealed on your behalf from the December 15 order—you would now be a free man.[14] Since, however, he did not add those few words, and since the time for such an appeal has

U.S. 92, 115, 26 S.Ct. 358, 50 L.Ed. 673; Alexander v. United States, 201 U.S. 117, 122, 26 S.Ct. 356, 50 L.Ed. 686. Not only was he a party; he was a party to a proceeding then in its initial stages. Discovery was in abeyance, and what the final relief would be was still a subject for conjecture. This sufficiently appears from the statement already made as to the function and duration of a proceeding supplementary to judgment. Finally, the contempt charged and adjudicated was not criminal, but civil; reparation to an obstructed creditor, not vindication of the public justice, was the purpose of the fine, and of the fine in all its parts."

The Fox case can probably be differentiated from the instant case. Among other things, here there was no money judgment, so that the subsequent proceedings in the suit were importantly different from the "supplementary proceedings" in the Fox case. True, as above noted, in footnote 7, there is some slight indication in the record here that the amount of the fine was determined by the amount of Sutton's alleged withdrawals of partnership funds of which the ancillary receiver was entitled to take possession; and the November 11 order directed the payment of the fine to the receiver. But the fine was imposed for refusal to testify, not for the withdrawal of those funds. More important, the subsequent commitment order of December 15, 1947, provided that defendant was to be released from jail upon paying the fine to the marshal, not to the receiver.

Penfield v. S. E. C., 330 U.S. 585, 67 S.Ct. 918, 91 L.Ed. 1117, which dealt with the enforcement of a subpoena issued by an administrative agency, may perhaps imply that an order like the commitment order here is wholly civil and interlocutory. But the court did not there refer to Hickman v. Taylor, 329

U.S. 495, 67 S.Ct. 385, decided at the same term, which presumably it did not over-rule.

13 Cf. Sunal v. Large, 332 U.S. 174, 178, 179, 67 S.Ct. 1588, 91 L.Ed. 1982. There the Court said that "the situations in which habeas corpus has done service for an appeal are the exceptions," adding, "Thus where the jurisdiction of the federal court which tried the case is challenged or where the constitutionality of the federal statute under which conviction was had is attacked habeas corpus is increasingly denied in case an appellate procedure was available for correction of the error." The Court cited In re Lincoln, 202 U.S. 178, 26 S.Ct. 602, 50 L.Ed. 984, Toy Toy v. Hopkins, 212 U.S. 542, 29 S.Ct. 416, 53 L.Ed. 644; Glasgow v. Moyer, 225 U.S. 420, 32 S.Ct. 753, 56 L.Ed. 1147. It differentiated cases in which "specific constitutional guaranties" were invaded. Thomas v. Collins, 323 U.S. 516, 65 S.Ct. 315, 89 L.Ed. 430, is such a case. But there was no such invasion here. Cases like In re Sawyer, 124 U.S. 200, 8 S.Ct. 482, 31 L.Ed. 402, and Ex Parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714, 13 L.R.A., N.S., 932, 14 Ann.Cas. 764, may be inapposite since they involved orders interfering with relations between a state and the federal government. Nor does Ex Parte Fisk, 113 U.S. 713, 5 S.Ct. 724, 28 L.Ed. 1117, seem to be in point, for there the Court said, (113 U.S. p. 718, 5 S.Ct. 726) that the commitment order was not appealable. (The ruling in the Fisk case, however, seems at variance with Hickman v. Taylor, supra, unless Fisk is distinguishable because there the order was made by a state court.)

14 The district court's lack of jurisdiction here is obviously a graver defect than that which existed in the Hickman case; for there the commitment order

now expired, you must remain in jail unless you pay a fine of $22,000 which you may not be able to pay, and which, if you can and do pay, you can never recover on the ground that there was an absence of jurisdiction in the court which ordered you to pay the fine or be jailed." I think that would be a shocking result.[15] Today only a case-hardened legalist would want a man to suffer the loss of personal liberty due solely to the fact that, on mistaken advice, he filled out a form printed on blue instead of white paper. Yet such, in effect, would be the result here if we were to refuse to release Sutton from imprisonment solely because he mistakenly used the habeas corpus ladder.

In divers contexts, we have rejected antiquated procedural technicalism, the exaltation of labels, in the practice of the trial courts. For instance, we have held that, when a suit is erroneously begun in admiralty, the district court should entertain it if it appears that the court has jurisdiction of the suit regarded as one at common law.[16] We ought not thus insist on such enlightened modernity in lower courts and retain rigid antiquarianism in our court. I see no reason why irrational procedural formalism, judicial red-tape-ism, yielding injustice, should not be repudiated in the appellate process, when no statute stands in the way.[17]

Consequently, if habeas corpus was the wrong remedy because the December 15 commitment order was appealable, I think we should treat this appeal from the order dismissing the habeas corpus writ as if it were an appeal (limited to the jurisdictional issue) from the December 15 order, since, as noted above, the period for appeal therefrom had not ended when Sutton took the present appeal.[18] On that basis, if (as my colleagues assume) the district court had no jurisdiction, we should vacate the commitment order and direct Sutton's release.

---

was bad merely because the court had no power, under the Rules, to exact the answers it commanded.

[15] The English appellate courts have been given the discretionary power to allow an appeal, for good cause shown, even after the usual time fixed for appeal has expired. See In re Berkley [1945] Ch. 1.

I think that, by statute, the federal appellate courts should be given a similar discretionary power.

[16] See, e.g., United States ex rel. Pressprich & Son Co. v. James W. Elwell, 2 Cir., 250 F. 939; James Richardson & Sons v. Conners Marine Co., 2 Cir., 141 F.2d 226, 229; Cory Bros. & Co. v. United States, 2 Cir., 51 F.2d 1010, 1013; Prince Line v. American Paper Exports, 2 Cir., 55 F.2d 1053, 1056.

And, as to liberality in interpreting complaints in order to sustain them, see, e.g., Dioguardi v. Durning, 2 Cir., 139 F.2d 774; Truth Seeker Co. v. Durning, 2 Cir., 147 F.2d 54.

[17] Cf. Wilson v. Southern Ry. Co., 5 Cir., 147 F.2d 165, 166; Georgia Lumber Co. v. Compania, 323 U.S. 334, 65 S.Ct. 293, 89 L.Ed. 280; Reconstruction Finance Corp. v. Prudence Group, 311 U.S. 579, 61 S.Ct. 331, 85 L.Ed. 364; Taylor v. Voss, 271 U.S. 176, 182, 46 S.Ct. 461, 70 L.Ed. 889.

[18] This could perhaps best be done by directing that the records in the habeas corpus suit and the receivership suit be consolidated, and that such parts of the latter record, if any, as are relevant and not now before us be certified to us. For it is possible, although highly unlikely, that the receivership record may contain data negativing the assumption that the district court had no jurisdiction of the receivership suit.