UNITED STATES of America and Mortimer Todel, as Receiver of the funds, assets and property of Roosevelt Capital Corporation, Plaintiffs-Appellees,

v.

FRANKLIN NATIONAL BANK, Defendant-Appellant.

Nos. 241, 487, Dockets 74–1062, 74–1816.

United States Court of Appeals, Second Circuit.

Argued Nov. 12, 1974.

Decided Feb. 24, 1975.

Julius Berman, New York City (Kaye, Scholer, Fierman, Hays & Handler, Sidney Kwestel, New York City, on the brief), for defendant-appellant.

Henry A. Brachtl, Asst. U. S. Atty. (David G. Trager, U. S. Atty., E. D. New York, on the brief), for plaintiffs-appellees.

Before FRIENDLY, FEINBERG and TIMBERS, Circuit Judges.

FEINBERG, Circuit Judge:

Franklin National Bank (Franklin) appeals from a decision of the United States District Court for the Eastern District of New York, Leonard P. Moore, Senior Circuit Judge,[1] awarding the United States and Mortimer Todel, the Receiver of Roosevelt Capital Corporation (Roosevelt), summary judgment for approximately $160,000 plus interest. On the present record, as will be seen below, there was no proper basis for jurisdiction in the Eastern District, although appellees Todel and the United States have suggested that this defect can be remedied in the district court. Therefore, we remand the case to the district court for further proceedings consistent with this opinion.

I

Roosevelt went into receivership because an unsavory group took it over and proceeded to dissipate its assets. In May 1964, the first step in the process began. The looters[2] met with the then owners of Roosevelt in a meeting room at a Franklin branch office, which the Bank had offered as an accommodation to Roosevelt, a Franklin depositor. During the course of the meeting, arranged to effect the sale of the corporation, one of the buyers asked a Franklin official[3] if he would draw two checks totalling $160,000 on the Roosevelt account, payable to the attorney and representative of the then owners of the stock of Roosevelt, so that the sale could be completed. Assuming that everything was proper, Franklin provided the checks and the sale was completed. The looters had managed to buy the corporation with its own money.

The interest of the United States stems from the fact that Roosevelt was a "small business investment company" under 15 U.S.C. § 681 et seq., indebted to the United States for approximately $150,000. When it became clear that Roosevelt had breached the conditions of

---

1. Sitting by designation as a district judge in the Eastern District of New York.

2. Some of the culprits have been convicted of criminally misapplying Roosevelt's funds. United States v. Crosby, 69 Cr. 404 (S.D.N.Y.,

judgments of conviction Mar. 26, 1971), aff'd in open court, 71–1516 (2d Cir. Sept. 16, 1971), cert. denied, 405 U.S. 917, 92 S.Ct. 938, 30 L.Ed.2d 786 (1972).

3. This official is no longer employed by Franklin.

its loan, the United States brought suit against Roosevelt in the United States District Court for the Southern District of New York to recover on its loan,[4] and also asked that a receiver for Roosevelt be appointed pendente lite under 15 U.S.C. § 687c(b).[5] Mortimer Todel was so appointed in March 1965, and given broad powers to collect and preserve the assets of Roosevelt. In August 1966, the United States recovered a default judgment in the action against Roosevelt. Since the dispersion of assets was thorough, the judgment remains unsatisfied.

In his effort to collect assets of Roosevelt, the Receiver brought this action against Franklin in May 1967 to recover the money paid out by Franklin to the former owners of Roosevelt at the looters' behest. The United States joined as co-plaintiff. The suit was filed in the Eastern District of New York[6] and alleged as jurisdictional grounds 28 U.S.C. § 1345 and 15 U.S.C. § 687c for plaintiff United States and 28 U.S.C. § 1331 and the federal receivership appointment for plaintiff Todel. The complaint prayed alternatively for $160,000 for Todel as Receiver of the assets of Roosevelt or for $150,000 for the United States and $10,000 for Todel. After pre-trial discovery, including the deposition of the bank officer who approved drawing the checks, plaintiffs moved for summary judgment. Judge Moore granted the motion, and it is from this decision that Franklin appeals.

## II

The parties did not raise the issue of jurisdiction in the district court, or in this appeal.[7] Franklin did question the presence of the United States as a co-plaintiff since the Receiver had already been appointed, but Judge Moore found that problem unnecessary to decide because the Receiver was a party to the suit and "his power to bring this action has not been challenged. . . . " It was not until oral argument before us, when Judge Friendly raised the question in open court, that the parties focused on the jurisdictional issue. They also furnished us with post-argument briefs on the subject. Based on these submissions and our own research, we have come to the conclusion that on this record there was no jurisdiction over this action in the Eastern District of New York.

If the United States were a proper party plaintiff, then there would be no question that jurisdiction would

4. United States v. Roosevelt Capital Corp., 65 Civ. 162 (S.D.N.Y. Aug. 3, 1966).

5. At the time of Todel's appointment, § 687c provided:

(a) Whenever, in the judgment of the Administration, a licensee or any other person has engaged or is about to engage in any acts or practices which constitute or will constitute a violation of any provision of this chapter, or of any rule or regulation under this chapter, or of any order issued under this chapter, the Administration may make application to the proper district court of the United States or a United States court of any place subject to the jurisdiction of the United States for an order enjoining such acts or practices, or for an order enforcing compliance with such provision, rule, regulation, or order, and such courts shall have jurisdiction of such actions and, upon a showing by the Administration that such licensee or other person has engaged or is about to engage in any such acts or practices, a permanent or temporary injunction, restraining order, or other order, shall be granted without bond.

The proceedings in such a case shall be made a preferred cause and shall be expedited in every way.

(b) In any such proceeding the court as a court of equity may, to such extent as it deems necessary, take exclusive jurisdiction of the licensee or licensees and the assets thereof, wherever located; and the court shall have jurisdiction in any such proceeding to appoint a trustee or receiver to hold or administer under the direction of the court the assets so possessed.

6. There had been a prior civil suit by the Receiver and the United States against several defendants, Franklin among them, attempting to recover the monies looted from Roosevelt. Franklin successfully moved to dismiss the claim against it because of improper venue in the Southern District. See United States v. Crosby, Memorandum of Jan. 23, 1967, 66 Civ. 2026 (S.D.N.Y.).

7. Cf. United States v. D'Amato, 507 F.2d 26 (2d Cir. 1974).

lie. 28 U.S.C. § 1345. But we believe that the United States is not properly in this action. While we have found no cases raising this issue in which a receiver had been appointed under 15 U.S.C. § 687c(b), there are sufficiently analogous situations from which we may draw. For example, in a suit by minority stockholders against a corporation's officers to recover money fraudulently converted, the Supreme Court stated:

> If the corporation becomes insolvent, and a receiver of all its estate and effects is appointed by a court of competent jurisdiction, the right to enforce this and all other rights of property of the corporation vests in the receiver and he is the proper party to bring suit, and, if he does not himself sue, should properly be made a defendant to any suit by stockholders in the right of the corporation.

Porter v. Sabin, 149 U.S. 473, 478, 13 S.Ct. 1008, 1010, 38 L.Ed. 815 (1893). See also Schmidt v. Esquire, Inc., 210 F.2d 908, 912–13 (7th Cir.), cert. denied, 348 U.S. 819, 75 S.Ct. 31, 99 L.Ed. 646 (1954); Coyle v. Skirvin, 124 F.2d 934, 938 (10th Cir.), cert. denied, 316 U.S. 673, 62 S.Ct. 1044, 86 L.Ed. 1748 (1942); Klein v. Peter, 284 F. 797, 799 (8th Cir. 1922); 3 R. Clark, The Law and Practice of Receivers § 786.1 (3d ed. 1959) (hereafter Clark). But see Hanna v. Brictson Mfg. Co., 62 F.2d 139, 143 (8th Cir. 1932). A similar rule prevails in bankruptcy proceedings. 2A Collier, Bankruptcy ¶ 47.05 at 1745 (14th ed. 1968).

The original purpose of the receivership here was to collect assets to pay creditors, including the United States. Even the complaint in this action against Franklin impliedly recognizes this in its prayer for relief which calls for, at a minimum, a separate $10,000 recovery for Todel. To collect the assets, Todel was directed to

> take possession, control and custody of all funds, assets, and property of Roosevelt Capital Corporation, wherever located, including but not limited to . . . claims and choses in action, and . . . take all such action as

may be deemed necessary or advisable to collect, preserve and protect such assets and to enforce and recover upon any such claims and choses in action by the institution of appropriate legal proceedings or otherwise.

Thus, to hold that the creditor United States could still prosecute Roosevelt's action against Franklin would be inconsistent with the terms of Todel's original appointment in March 1965. If we allowed the United States as a creditor of the corporation to join as a co-plaintiff then there would be no reason to refuse other creditors in other actions the right to join receivers' suits until the resulting confusion brought chaos to the administration of receiverships. Cf. In re American Fidelity Corp., 28 F.Supp. 462, 471–72 (S.D.Cal.1939), and the cases cited therein. It is true that the default judgment obtained in August 1966 by the United States against Roosevelt directed the Receiver to continue his efforts to recover assets "for the purpose of satisfying the judgment entered herewith." From this, the United States argues that Todel was merely a "receiver-in-aid-of-judgment," so that the cases cited above do not apply. We need not consider whether this argument would be persuasive if Todel's powers were so limited. They were not; the default judgment relied upon by the United States also continued "in full force and effect" the original order appointing the Receiver with the broad powers specified therein.

### III

Since the United States is not properly a party, any jurisdictional support for bringing the action must be furnished by the Receiver alone. The complaint alleged that such jurisdiction was based on Todel's status as a receiver appointed by the federal courts and on 28 U.S.C. § 1331, the federal question statute. We will first discuss the federal receivership appointment as a basis for jurisdiction.

Prior to the amendment of Fed.R. Civ.P. 66 in 1946 (carried forward as an amendment to 28 U.S.C. § 754 in 1948), a receiver appointed in one federal district

could not even bring suit in another district without undergoing the bothersome procedure of preliminary ancillary appointment. See 7 J. Moore, Federal Practice ¶ 66.07[1] at 1933–34 (2d ed. 1948) (hereafter Moore). But 28 U.S.C. § 754 now provides that a federal receiver "shall have capacity to sue in any district without ancillary appointment . . .." The comments of the Advisory Committee on Rules for Civil Procedure on the then new Rule 66 make clear that giving the receiver automatic capacity to sue was only intended to streamline federal practice, and do not mention any change in the law with respect to jurisdiction. U.S.Code Cong.Serv., 79th Cong., 2d Sess., 1946 at 2365. Thus, the earlier learning with respect to jurisdiction over actions brought by receivers is still relevant.

 Whether a receiver appointed in one federal district need allege an independent jurisdictional basis to maintain a suit in another federal district remains a question that has not been decided authoritatively. Had Todel been able to maintain this action in the Southern District where he had been appointed receiver,[8] however, no independent jurisdictional ground would have been needed for

> such action or suit is regarded as ancillary so far as the jurisdiction . . . is concerned; and we have repeatedly held that jurisdiction of these subordinate actions or suits is to be attributed to the jurisdiction on which the main suit rested . . ..

Pope v. Louisville, N. A. & C. Ry., 173 U.S. 573, 577, 19 S.Ct. 500, 501, 43 L.Ed. 814 (1899). See also Esbitt v. Dutch-American Mercantile Corp., 335 F.2d 141, 142–43 (2d Cir. 1964); Roof v. Conway, 133 F.2d 819, 823 (6th Cir. 1943); 7 Moore, ¶ 66.07[3] at 1938. This rule is well settled, and the reasons for it are clear. The ancillary suit is cognizable in the court of the main suit regardless of the citizenship of the parties or the amount in controversy because the res

over which the receiver took control is already before the court. Murphy v. John Hofman Co., 211 U.S. 562, 569, 29 S.Ct. 154, 53 L.Ed. 327 (1909); White v. Ewing, 159 U.S. 36, 38–39, 15 S.Ct. 1018, 40 L.Ed. 67 (1895). Thus, since the receivership was already before the Southern District, there would have been jurisdiction in that court. But this reasoning does not apply to this suit brought in the Eastern District. The treatise writers seem to agree. Discussing this analysis, Professor Moore states "Whether these theories of ancillary jurisdiction will support an action by or against the receiver in a federal court other than the receivership court is doubtful." 7 Moore ¶ 66.07 [3] at 1940. Similarly, Professors Wright and Miller state that "a federal receiver appointed under Rule 66 may sue in any district court without any need for the appointment of an ancillary receiver, provided, of course, that the court has subject matter jurisdiction," and that "It is uncertain whether ancillary jurisdiction only exists in the appointing court, although this probably is the case." 12 C. Wright and A. Miller, Federal Practice and Procedure § 2984 at 31, § 2985 at 45 (1973) (footnotes omitted). To the same effect, see 1 Clark § 320(h).

What case analysis we have found also supports this result. The Supreme Court has not spoken directly on the issue but has hinted that an independent jurisdictional basis is necessary. In Gableman v. Peoria, D. & E. Ry., 179 U.S. 335, 21 S.Ct. 171, 45 L.Ed. 220 (1900), a receiver appointed in the Southern District of Illinois tried to remove a suit brought against him in the Indiana state courts to the Circuit Court for the District of Indiana. The Supreme Court denied removal, holding that the case was not one that arose under the laws or Constitution of the United States merely because of the presence of a federally appointed receiver. In Raphael v. Trask, 194 U.S. 272, 24 S.Ct. 647, 48 L.Ed. 973 (1904), the question presented was whether an action could be maintained in the Southern

---

8. Todel tried to but was blocked because of venue problems. See note 6 supra.

District of New York without diversity on the theory that it was ancillary to a pending suit in the Utah Circuit Court. The Court said that:

> [W]e are unable to find any precedent in the reported cases or text books which will maintain this bill in that aspect. Ancillary bills are ordinarily maintained in the same court as the original bill is filed, with a view to protecting the rights adjudicated by the court in reference to the subject-matter of the litigation, and in aid of the jurisdiction of the court, with a purpose of carrying out its decree and rendering effectual rights to be secured or already adjudicated.

194 U.S. at 278, 24 S.Ct. at 649. In Mitchell v. Maurer, 293 U.S. 237, 55 S.Ct. 162, 79 L.Ed. 338 (1934), the Court held that where the primary receivership was in a state court there must be independent jurisdictional grounds for an action for appointment of an ancillary federal receiver. It also posed the question whether the same rule applied when the primary receivership was in the federal court. While the Court did not answer, it noted in a footnote that Raphael v. Trask "intimated that the jurisdiction of a federal court cannot be based upon an original suit in another federal court," 293 U.S. at 243 n. 3, 55 S.Ct. at 165, and that the lower courts were divided on the question.[9]

Since *Mitchell*, the lower courts are less divided. The most recent case we have found that directly treats the issue is Kelley v. Queeney, 41 F.Supp. 1015 (W.D.N.Y.1941). Plaintiffs in that case, who were trustees appointed in the Eastern District of Pennsylvania, sued in New York to remove defendants as voting trustees of the corporation. In the face of defendants' motion to dismiss for lack of diversity, plaintiffs asserted that the district court in New York had "jurisdiction over this action as ancillary" to the district court in Pennsylvania, and thus there need not be diversity of citizenship. The district judge disagreed:

> Without showing diversity of citizenship, ancillary action can be brought only in the court in which the main action was brought wherein the plaintiffs were appointed trustees, and this was the Eastern District of Pennsylvania. In Sullivan v. Swain, C.C., 96 F. 259, it was said: "Where a receiver * * * brings an action in the court which appointed him, such court has jurisdiction of the action * * *; but in such a case the jurisdiction is upheld on the ground that the action is but auxiliary to * * * the original suit * * *. This ground of jurisdiction, however, manifestly does not exist where the receiver sues in a jurisdiction other than that of his appointment."

41 F.Supp. at 1018.

While this court has not decided the point, in United States ex rel. Sutton v. Mulcahy, 169 F.2d 94 (2d Cir. 1948), cert. denied, 337 U.S. 956, 69 S.Ct. 1526, 93 L.Ed. 1755 (1949), a habeas action attacking a contempt order on the ground that the charging court was without jurisdiction, we strongly indicated that an independent jurisdictional ground would be necessary. The lower court, in Menashe v. Sutton, 71 F.Supp. 103, 105 (S.D.N.Y.1947), an action ancillary to a Hawaii receivership, had held that the presence of a federally appointed receiver was sufficient grounds for jurisdiction, and later held Sutton in civil contempt. In the habeas action, we held that jurisdiction, once litigated, was ordinarily immune from collateral attack and affirmed the denial of the writ. 169

---

9. The cases cited for the proposition that the receiver needed an independent jurisdictional basis included Winter v. Swinburne, 8 F. 49 (C.C.E.D.Wis.1881), and Sullivan v. Swain, 96 F. 259 (C.C.S.D.Cal.1899). A case cited for the contrary conclusion was Bluefields S.S. Co. v. Steele, 184 F. 584, 587 (3d Cir. 1911). There, plaintiff sought the appointment of an ancillary receiver to prosecute Bluefield's an-

titrust suit. While the court stated that it had the power to appoint the receiver regardless of a showing of diversity, the language was purely dictum since the parties were of diverse citizenship and the court refused to make the appointment anyway on the basis that the grounds for the appointment were insufficient.

F.2d at 96. In two separate opinions, however, Judge Clark, concurring, and Judge Frank, dissenting, both stated that they believed the district court had been incorrect in allowing the suit without an independent basis for jurisdiction. 169 F.2d at 96, 97 n.l. Apparently, Judge Rifkind agreed, for when the case was thereafter assigned to him for defendants' motion to dismiss for lack of jurisdiction, he allowed the complaint to be corrected *nunc pro tunc* to show diversity. Menashe v. Sutton, 90 F.Supp. 531, 533 (S.D.N.Y.1950).

▬ Even if the Eastern District court did not have general ancillary jurisdiction over the claim of this federally appointed Receiver, the United States argues that this case "is so imbued with the interest of the Government" that it arises under the laws of the United States and therefore jurisdiction is available under 28 U.S.C. § 1331. We do not agree. As we noted above, Gableman v. Peoria, D. & E. Ry., supra, makes clear that the presence of a federally appointed receiver does not make the case one arising under the laws of the United States. See also 7 Moore ¶ 66.07[3] at 1940 n.9, ¶ 66.07[4] at 1942. Nor does Todel's claim against Franklin for an "improper and unlawful" payment from Roosevelt's account raise any issues of federal law.

▬ The statute under which Todel was appointed, see note 5 supra, does not seem to expand his rights beyond those of other equity receivers. 15 U.S.C. § 687c(a) gives the Small Business Administration authority to apply to the district court for an injunction or other relief for violation of the provisions of the small business investment program and it states that "such courts shall have jurisdiction of such actions . . .." Subsection (b), on the other hand, only permits the court "as a court of equity"

in such proceedings to take jurisdiction of the small business investment company and its assets and to "appoint a trustee or receiver to hold or administer under the direction of the court the assets so possessed." The section says nothing about the power of the receiver to invoke the jurisdiction of the federal courts in general. The legislative history of subsection (b), added in 1961, does not indicate the contrary. See 2 U.S. Code Cong. & Admin.News, 87th Cong., 1st Sess. 1961 at p. 3064 (S.Rep. No. 801). The drafters noted that subsection (a) continued "the existing authority of the Administration to apply to Federal district courts for injunctions . . .." They said that the new subsection (b) provided "specific authority (not contained in the present act) for the court in such a proceeding to appoint a trustee or receiver to take control of the small business investment company where the court deems it necessary." There was not a word about the jurisdiction of other federal courts to entertain receivers' suits. Thus, we hold that Todel's second ground for jurisdiction, 28 U.S.C. § 1331, must also fail.

Apparently recognizing that we might find no jurisdictional basis for a suit in the Eastern District, appellees have urged that we not order outright dismissal. Instead they ask us only to remand to the district court for possible dismissal there so that the pleadings might be amended to cure the jurisdictional defect. They suggest that the receivership might be discontinued, thus leaving the United States as the sole plaintiff and the suit properly in the Eastern District. Or, they note that under 15 U.S.C. § 687c(c), enacted in 1966 (after Todel was appointed as receiver) and reproduced in the margin,[10] the Small Business Administration can act as a receiver for a small business investment company.[11] They claim that the

10. Section 687c(c) provides:

The Administration shall have authority to act as trustee or receiver of the licensee. Upon request by the Administration, the court may appoint the Administration to act in such capacity unless the court deems

such appointment inequitable or otherwise inappropriate by reason of the special circumstances involved.

11. Weinmann, Receiverships Under the Small Business Investment Act, 25 Bus. Law. 237 (1969).

Administration could now be appointed *nunc pro tunc* to replace Todel as receiver and the action then continued in the Eastern District under 28 U.S.C. § 1345.

We express no view on these suggestions or on others appellees may offer, leaving them for the district court to consider. At this time we hold only that on the record before us the United States District Court for the Eastern District of New York did not have jurisdiction over this suit, and we remand for further action consistent with our opinion.[12]

**12.** We note that even if the district court must dismiss this action plaintiffs are not without a remedy in the state courts. Even if the statute of limitations has otherwise run, N.Y.C.P.L.R. § 205(a) (McKinney 1972) allows the parties six months to begin anew. See Brown v. Bullock, 17 A.D.2d 424, 235 N.Y. S.2d 837, 840 (1962).